Argued October 8, affirmed December 26, 1975

# DAVID M. SCOTT CONSTRUCTION CORP., *Respondent, v.* ROUSH, *Appellant.*

544 P2d 162

*Frank V. Langfitt III,* Portland, argued the cause for appellant. With him on the brief were Howard R. Hedrick, and Hedrick, Fellows, McCarthy & Zikes, PC, Portland.

*Robert D. Herndon* of Ringle & Herndon, Gladstone, argued the cause and filed a brief for respondent.

## BRYSON, J.

Plaintiff brought this action on a written earnest money agreement to recover an overpayment on the purchase price for certain land. The trial court found in favor of plaintiff and entered judgment accordingly. Defendant appeals.

The parties executed an earnest money agreement and addendum wherein plaintiff agreed to purchase 8.392 acres in Washington County to subdivide for residential purposes. Both parties are licensed real estate brokers and at the time of signing the agreement they knew that the City of Beaverton was widening S.W. Murray Road, which adjoins the east boundary of the property involved. For this reason the agreement provided:

"(1) $6,950.00 per net acre to be exclusive of present and future rights of way requirements on Murray Road.

"* * * * *." (Hereinafter Item (1).)

Before closing the transaction, plaintiff determined that the City of Beaverton would, as a condition of approving the land for subdividing, require the dedication of a 13-foot strip of land along Murray Road and within the 8.392 acres for public road purposes, without compensation. Based on the total purchase price, this 13-foot strip, containing .175 of an acre, had a value of $1,216.25. Plaintiff tendered the total purchase price less any sum for the .175 of an acre. Defendant demanded payment for the full 8.392 acres. Plaintiff then tendered the additional $1,216.25 "under protest" and defendant conveyed the

property to plaintiff by deed. Plaintiff's complaint seeks recovery of the $1,216.25.

Prior to trial, the parties stipulated:

"1. That if a surveyor were called to testify to the acreage in the tract described in plaintiff's complaint that he would testify that the entire tract contains 8.392 acres and that the surveyor would further testify that less the disputed 13 foot strip the tract contains 8.217 acres for a difference of .175 acres.

"2. That utilizing the acreage of 8.217 acres the purchase price was $57,108.15 and utilizing the acreage of 8.392 acres the purchase price was $58,-324.40. That the difference of .175 acres amounts to a difference in the purchase price of $1,216.25.

"3. That plaintiff did tender the disputed $1,216.25 for the deed under protest.

"* * * * * *"

The trial court found that defendant was "aware that plaintiff was purchasing on a net acreage basis" subject to Item (1) in the contract; "that defendant knew or should have known at the time of entering into the contract that the City of Beaverton plans called for the taking of an additional 13 feet for the widening of Murray Road and that the city would require the dedication of such 13 foot strip as a condition of filing a subdivision plat" and "[t]o simply determine the net acreage on the boundaries then in existance [sic] would in effect ignore the condition above quoted."

■ Defendant contends that the trial court erred in finding that the purchase price of the parcel was to be computed on the basis of 8.217 "net" acres. The case was tried without a jury. The sole issue on appeal is whether there is any substantial evidence to support the trial court's findings. *Jorritsma v. Farmers' Feed & Supply,* 272 Or 499, 538 P2d 61

(1975). Further, since Item (1) of the earnest money agreement and addendum is ambiguous, its meaning is a matter decided by the trier of facts when, as here, extrinsic evidence is received. *Hekker v. Sabre Construction Co.*, 265 Or 552, 555, 510 P2d 347 (1973); *Rolfe v. N. W. Cattle & Resources, Inc.*, 260 Or 590, 600-01, 491 P2d 195 (1971); *May v. Chicago Insurance Co.*, 260 Or 285, 292-94, 490 P2d 150 (1971).

The record shows that defendant read the earnest money agreement and addendum and was aware of its terms. The record also shows that defendant was familiar with the difficulties confronted by developers in obtaining approval of proposed subdivision plans.

On cross-examination, defendant testified:

"Q   Well, the net acre to be exclusive of present and future rights of way requirements on Murray Road, what did that particular clause mean to you?

"A   However wide that road was, that is what it would be.

"Q   At that time?

"A   And the future * * * I knew that he [David Scott] was a developer and if something happened, I couldn't make him pay for that piece of road * * *.

"Q   Well, you have heard the testimony here today that the City of Beaverton has imposed as a condition of the approval of the plat the dedication of the thirteen feet?

"A   Right.

"Q   Now, he isn't going to have the use of that thirteen feet, is he?

"A   That is quite true and I wouldn't either."

The main issue in this case is the meaning that

the parties attached to Item (1) in the earnest money agreement. That provision states that the purchase price was to be determined according to the net acreage, "exclusive of present and future rights of way requirements on Murray Road." There is evidence that the parties intended that plaintiff would not have to pay for that portion of the parcel that the City of Beaverton might demand as a right of way for Murray Road. Defendant's own testimony confirms this. There also is evidence that on March 13, 1973, the parties realized that the extent of this right of way could vary in size and that plaintiff would have 120 days to ascertain the City of Beaverton's demands. Finally, there is evidence that at the time of closing the City of Beaverton did demand a right of way of .175 of an acre.

Defendant does not contest these facts. Instead, defendant questions the future rights and liabilities of the parties if the City of Beaverton were to require a lesser or greater right of way at the time when plaintiff submits its *final* plat for approval, or if the City of Beaverton were to condemn the parcel instead of waiting for plaintiff's dedication,[1] or if plaintiff were to abandon its plans to subdivide the parcel.

■ Whether either party would be unjustly enriched if such events occurred in the near future is not before us on this appeal. We are concerned only with plaintiff's allegations and proof that defendant breached the agreement to compute the purchase price of the property on the basis of 8.217 "net" acres, at $6,950 per acre. We find there is evidence in the record to support these allegations and the findings of the trial court and accordingly we do not dis-

[1] There is evidence that the city has a long-range plan for widening Murray Road in this general vicinity.

turb those findings on appeal. *May v. Chicago Insurance Co., supra* at 294. This conclusion also disposes of defendant's second assignment of error on the question of damages.

Affirmed.