Argued January 4, affirmed as modified
and remanded April 3, 1979

MESKIMEN, *Respondent/Cross-appellant,*
*v.*
LARRY ANGELL SALVAGE COMPANY et al,
*Defendants,*
CITIZENS BANK OF CORVALLIS,
*Appellant/Cross-respondent.*
(No. A7606-08835, SC 25636)

592 P2d 1014

Milton R. Smith, Portland, argued the cause for appellant/cross-respondent. With him on the briefs were Edward H. Warren, and Acker, Underwood, Beers, Smith & Warren, Portland.

John Dudrey, of Frederickson, Weisensee & Cox, Portland, argued the cause and filed briefs for respondent/cross-appellant.

Before Denecke, Chief Justice, and Tongue, Bryson and Linde, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff brought this action to recover damages to his fishing boat which was struck by the tugboat "Satan," operated by defendant Angell. The accident occurred on March 16, 1976, on the Oregon Slough, north of Portland.

At the time of the accident, defendant Larry Angell Salvage Company was buying and renovating a tugboat, the "Satan," from defendant Citizens Bank of Corvallis. It is not contested on appeal that defendant Angell's negligence caused the accident.

The principal assignments of error raise the issue of whether the bank is liable for Angell's negligence on a respondeat superior theory. The jury found that it was and judgment was entered in favor of plaintiff. The bank appeals.[1] Plaintiff cross-appeals from certain adverse rulings by the trial court.

Defendant bank's connection with the other defendants and the "Satan" began when the bank lent $434,871.15 to defendant Duramac, Inc., to renovate the boat. Duramac defaulted on its loan payments and thereafter reached an amicable agreement with the bank whereby the bank repossessed the boat and entered into a contract regarding the sale of the boat to defendant Larry Angell Salvage Company. The contract by which these arrangements were made (referred to as the March 2 contract) was received as evidence for plaintiff's contention that Angell[2] was the bank's employee. The lengthy March 2 contract provides in part as follows:

---

[1] The other named defendants have not appealed.

[2] Defendant Larry Angell Salvage Company is an Oregon corporation. Defendant Lawrence G. Angell is the president, a director, and, presumably, sole shareholder, if shares were issued, of Larry Angell Salvage Company. Angell executed the March 2 contract as president of the corporation and as an individual. The contract refers to the corporation and Angell, an individual, as "Angell." For all purposes herein, they are the same party. The bank's attorney prepared the contract of March 2.

"IV

"Angell agrees to work in cooperation with Bank to forthwith complete renovation of Vessel for its intended purposes, and thereafter to forthwith place Vessel in operation and operate it in a continuous, good, and workmanlike fashion and manner on a full time basis so long as any unpaid balance is owed on the purchase price or renovation loan for Vessel, and to apply the receipts from such operation as hereinafter provided.

"V

"Angell agrees that Bank will receive monthly one hundred percent (100% of the net proceeds from the operation of Vessel and its equipment for one (1) full fiscal year from the date that said Vessel commences operation. Net proceeds shall be construed to mean gross receipts from operation, less out-of-pocket costs and expenses, without allowance for depreciation or non-cash expenses. Angell shall receive a salary of Five Hundred Dollars ($500.00) per week and an open expense account of Two Hundred Dollars ($200.00) per month, and no more. Salary and expenses to Angell shall be paid only during monthly periods when Vessel's operation shows a net profit.

"* * * * *.

"X

"Angell shall forthwith complete registration of said vessel and execute and deliver the aforesaid promissory note and mortgage to Bank and thereafter Angell shall, with funds to be advanced by Bank, undertake immediately the necessary work to complete renovation of Vessel and place it in operation. Angell shall consult with Bank through Bank's representative on work to be performed to complete said renovation prior to incurring expense therefor and Bank shall advance funds only for renovation work for which Bank has given prior approval. Angell and Bank agree to cooperate together to arrive at mutual agreement as to the work to be done and the manner of its accomplishment. In the event that renovation of Vessel cannot be completed within the maximum amount to be advanced by Bank, then Angell agrees to obtain and provide funds from other source to complete renovation and to place Vessel in

operation. Expense of payment of moorage site during completion of renovation shall be considered a cost of renovation. So long as renovation proceeds diligently and continuously to completion, Angell shall receive a salary during completion of renovation of Two Hundred Fifty Dollars ($250.00) per week for which he shall work full time to supervise and assist to plan renovation and which will be payable out of renovation funds. Bank designates RONALD McREARY as its representative to work with Angell regarding renovation and approval of procedures thereunder. Bank reserves the right to change its representative. The sales contract dated June 12, 1975, between Duramac and Angell is terminated.
"* * * * *."

During trial defendant bank moved for a directed verdict, to strike portions of the complaint, and for judgment notwithstanding the verdict. The trial court's denials of these motions are assigned as error. The assignments raise the issue as to whether plaintiff offered sufficient evidence for the court to submit to the jury plaintiff's contention that Angell, during renovation and at the time of the accident, was the bank's servant. We stated, in *Jenkins v. AAA Heating,* 245 Or 382, 386, 421 P2d 971 (1966), as follows:

"* * * [T]he question whether a given person is a servant or an independent contractor ordinarily is one of law, if the facts are not in dispute and if only one reasonable inference can be drawn from the facts. Before the court submits to the jury a challenged allegation that one person is the servant of another, the court must satisfy itself in a preliminary way that the case is one in which a jury finding to either effect would not be contrary to the law. * * *"

*Jenkins* states that the existence of the master-servant relationship "is said to turn upon the right of one party to control the activities of the other. * * * As long as such right exists, it is of no consequence that the employer may not have exercised it." *Jenkins,* at 387, also noted that the "definition of a servant in the Restatement (Second), Agency, § 220(1) (1958), is generally accepted by most courts." That section provides:

[91]

> "A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

*See also Great American Ins. v. General Ins.,* 257 Or 62, 66-67, 475 P2d 415 (1970).

Although the bank did not actually control Angell's activities at the time of the accident, which occurred while the renovations to the "Satan" were being made, the jury could have found from the March 2 contract and the evidence as a whole that the bank had a sufficient right of control to create a master-servant relationship.

As stated in paragraph X of the contract, the bank employed Ronald McReary, an engineer, "as its representative to work with Angell regarding renovation [of the "Satan"] and approval of procedures thereunder."

On March 15, 1976, McReary wrote to the bank stating that "[p]ursuant to our discussion of March 3, 1976, we have proceeded to pursue organizing and scheduling the completion work generally outlined * * *" as to the "Satan" and advised that he had completed the necessary applications by Angell "for radio licenses needed before operating 'Satan' during move from Vancouver, Washington to Angell Salvage moorage." This is the move, with Angell at the wheel of the "Satan," in which plaintiff's boat was damaged.

The contract provides that Angell was to "work full time to supervise and assist to plan renovation," that he was to receive a salary for doing so, and that the bank would have some veto power over Angell's decisions in the form of financial controls as well as their agent McReary's control.

Defendant bank argues there are other ways to read or construe the contract. Arguably, this is correct. However, we have consistently held that if the agreement is ambiguous, its meaning is a matter to be

[92]

decided by the trier of the facts when, as here, extrinsic evidence is received. *David M. Scott Const. v. Roush,* 273 Or 877, 880, 544 P2d 162 (1975); *Rolfe v. N. W. Cattle & Resources, Inc.,* 260 Or 590, 600-01, 491 P2d 195 (1971). Also, the contract, if ambiguous, is construed most strongly against the party which drew it. *Busto v. Manufacturers Life Ins. Co.,* 276 Or 707, 712, 556 P2d 96 (1976). Here, the bank, through its attorney, prepared the contract.

■ We conclude the contract was ambiguous and the jury, assessing the contract together with other evidence received, could conclude that the agreement created an employment relationship between the bank and Angell. The court did not err in submitting the matter to the jury.

■ Defendant bank next contends the trial court erred by instructing the jury in regard to employer-employee relationship as follows:

"The next thing you would consider in this determination, that is, if you find there was a collision, was the bank acting as an employer of Angell or was the bank merely loaning money to Angell to operate his boat.

"\* \* \* \* \*.

"Now, in determining the question of the bank's responsibility, you are to determine first was the bank the employer of Angell, and in this determination you would consider all of the evidence that has been submitted to you to determine whether the bank had the control, or the right of control of the operation of the — Mr. Angell while he was working on the boat. Not a financial control, but the actual operating control of the boat. The bank contends that it was loaning the money to the — to Angell, and if you find that it was a loan, then the bank would not be responsible; that is a loan.

"If you find that it was acting as an employer, had the right of control and did control Angell, then the bank would be held responsible."

The bank's exception to this instruction was not so much that it was wrong but that it was incomplete,

stating "without defining both employer and employee, I think there could be some problem." Defendant offers no argument on this assignment and cites no cases. The assignment not having been discussed in the brief, it "is presumed waived," *LaBarge v. United Insurance Co.,* 221 Or 480, 490, 349 P2d 822 (1960), or it is "abandoned." *Whitehead v. Montgomery Ward & Co., Inc.,* 194 Or 106, 129, 239 P2d 226 (1952).

Defendant's assignments of error five through ten, consolidated for argument in its brief, contend that the court erred in failing to give six of defendant's requested instructions. In discussing these assignments, it is necessary to explain how this case got to the jury. Plaintiff's complaint[3] alleged two causes of action and several separate counts, including the theories of respondeat superior, joint venturers, and agency between Angell, operator of the tug "Satan," and defendant bank. The court struck all of plaintiff's theories from the complaint except that of employee-employer and submitted the case to the jury on the one theory of employee-employer relationship between Angell and the bank.

Two of defendant's instructions requested and not given concern "joint venturer" and "independent contractor." Another of the requested instructions attempted to distinguish the difference between an "employer-employee" relationship and that of "an agency relationship." In colloquy between court and counsel before instructing the jury, the court advised the parties:

> "THE COURT: Gentlemen, we are not giving the pleadings to the jury anymore. When I get through with these pleadings that jury is just going to know one thing [two things], was there a collision or not and was the — Mr. Angell an employee of the bank, period.
>
> [Bank's attorney]: Okay."

---

[3] The pleadings did not go to the jury pursuant to 1977 Oregon Laws, ch 357 (ORS 17.320, 17.505, 17.510), and the court orally instructed the jury on the summary of issues submitted.

■ In general, it is apparent from the requested instructions that they were prepared prior to trial and before the court removed the issues stated in the pleadings and gave its summary of issues to the jury. Defendant bank filed only a general denial to plaintiff's complaint. Defendant argues "[i]f the evidence supports any relationship other than a debtor-creditor relationship between Bank and Angell * * * the jury should * * * have been told that there was a third alternative in their determination and the standards to make the choice between an employer-independent contractor and an employer-employee relationship." No argument is offered as to failure to instruct on joint venturer or agency relationship between bank and plaintiff. Under the evidence and the issues submitted to the jury, we do not believe that it was essential to instruct on independent contractor relationship. That is not to say we would have reversed if the proper instruction on the subject had been given, but failure to do so was not prejudicial error.

Another of the requested instructions would have told the jury that the bank "was not the owner of the Satan" and that it was owned by defendant Angell. The only harm asserted by the bank as a result of the court's failure to give the instruction is that the jury might have speculated "that perhaps Bank would be responsible as the owner." This possibility is not sufficient to make the failure to give the instruction harmful in light of the fact that the jury was not instructed on the theory of an owner's liability. Also, there is a conflict of evidence, as shown by the exhibits and testimony, as to title to the "Satan." The "Satan" was a federally documented vessel. We fail to see how failure to give this instruction was error.

■ One other requested instruction not given would have stated still further details to the meaning of "control" between the master-servant relationship. We conclude that the instructions given[4] were adequate to

---

[4] The instruction in one instance speaks of "actual" control but the true test is merely the right to control, but this error could not have prejudiced defendant, only plaintiff.

apprise the jury of their duty as a matter of law under the facts of this case, and the requested instruction would have confused the jury. Further, the instruction as worded was not neutral in form. *Ginter v. Handy,* 244 Or 449, 451, 419 P2d 21 (1966).

■ Defendant bank next argues that certain letters from Ronald McReary to defendant bank were hearsay and were therefore improperly admitted into evidence by the trial court. In *Elam v. Soares,* 282 Or 93, 97, 577 P2d 1336 (1978), we defined hearsay as follows:

> " '* * * Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " (Citing C. McCormick, Evidence 584, § 246 (2d ed 1972.)

*See also Stanfield v. Laccoarce,* 284 Or 651, 656-57, 588 P2d 1271 (1978). One of the letters in question is a feasibility study of the "Satan." The other is a completion progress report that states in detail the work done on the "Satan" at that time. The fact that the letters were written is *not* hearsay. Further, the fact that McReary wrote the letters and sent them to the bank is relevant evidence that McReary was working for the bank in connection with the renovation of the "Satan." They were not hearsay when introduced to prove that they were written.[5]

■ Defendant's last assignment of error is that the "jury was erroneously allowed to consider and returned damages in excess of those proven." The claimed excess is $500. This assignment of error is based upon the assumption that plaintiff's testimony established the value of his boat as $10,000. This assumption is not correct. Plaintiff testified that at the time of the collision his boat was worth $12,500. The court did not err in this respect.

---

[5] Further, the trial court was not requested to give a limiting instruction. *See Rader v. Gibbons & Reed Co.,* 261 Or 354, 362, 494 P2d 412 (1972).

■ On plaintiff's cross-appeal, the first and fifth assignments have been rendered moot by our disposition of defendant's appeal. The second assignment of error is that the trial court erred in withdrawing the issue of punitive damages from the jury. The plaintiff's requested instruction on punitive damages was premised on a jury finding of wanton misconduct by Angell. We have reviewed the evidence and conclude that it was insufficient to allow the jury to find such wanton misconduct. The trial court did not err in withdrawing this issue from the jury.

■ Plaintiff next argues that the trial court erred in denying plaintiff's motion for expenses and attorney fees pursuant to ORS 41.626(6),[6] based on the bank's insufficient answers to plaintiff's requests for admissions.

The requests for admission were three: that the "Satan" had struck plaintiff's boat; that Larry Angell had informed certain persons of the collision; and that McReary informed the bank on March 18 that the "Satan" "had had a collision with plaintiff's fishing vessel, described by McReary as 'an old fishing vessel'." The bank denied the first two requests for admissions based on Angell's assertions that there had been no collision and that he had not informed anyone that there had been. Although there is testimony to the contrary, we conclude that Angell's story gave the

---

[6] ORS 41.626 provides:

"* * * * *.

"(6) If a party fails to admit the genuineness of any document or the truth of any matter as requested under ORS 41.626 to 41.635, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that:

"(a) The request was held improper and objectionable; or

"(b) The admission sought was of no substantial importance; or

"(c) The party failing to admit had reasonable ground to believe that he might prevail on the matter; or

"(d) There was other good reason for the failure to admit.

"* * * * *."

bank "reasonable ground to believe that [it] might prevail on the matter," ORS 41.626(6)(c), and thus saved it from the sanctions of ORS 41.626(6). As to McReary's report, the bank admitted that McReary had informed the bank of a collision between the "Satan" and plaintiff's fishing vessel, but denied that that vessel was plaintiff's. The denial is sufficient for the bank's denial. The trial court did not err in refusing to award expenses and attorney fees to plaintiff pursuant to ORS 41.626.

Plaintiff's final assignment of error concerns the trial court's method of awarding interest on certain sums due pursuant to the verdict. The trial court ruled that plaintiff was entitled to pre-judgment interest on the sum of $10,000 awarded for the damage to his boat. However, the court also ruled in effect that this pre-judgment interest would not be a part of the judgment.[7] The latter ruling denied plaintiff post-judgment interest on the pre-judgment interest. Plaintiff correctly contends that this was error. Where pre-judgment interest is awarded, it should be made a part of the judgment so that post-judgment interest will apply to it. *Highway Comm. v. DeLong Corp.,* 275 Or 351, 357-58, 551 P2d 102 (1976). Therefore, the judgment should be modified to provide $10,000 for damages to the boat; 6 percent per annum interest on that $10,000 from March 16, 1976, to December 13, 1977 (the date of the original judgment); and $1,481 for other items of damages (as to which there are no disputes about interest). Interest of 6 percent per annum shall run on the above amount from December 13, 1977, until paid, together with plaintiff's costs and disbursements as awarded by the trial court.

Affirmed as modified and remanded for entry of judgment consistent with this opinion.

[7] The court did this by awarding interest on the $10,000 from the time of the accident until paid. This interest is not compounded; therefore, the court's method of awarding interest would yield a slightly smaller sum to plaintiff than would the alternate method of making the award of pre-judgment interest a part of the judgment and awarding further interest thereon. The alternate method *would* compound the interest.