Argued and submitted February 23, reversed and remanded June 10, reconsideration denied August 21, petition for review denied September 15, 1987 (304 Or 149)

# DOOLITTLE,
*Appellant,*

*v.*

# L. E. WALLMAN CO.,
*Respondent.*

(84-0448C; CA A39445)

738 P2d 200

Michael A. Greene, Portland, argued the cause for appellant. With him on the briefs were Jose R. Mata and Rosenthal & Greene, P.C., Portland.

Fred L. Kopatich, Portland, argued the cause for respondent. With him on the brief were Andrew K. Chenoweth and Allen, Kilmer, Schrader, Yazbeck & Chenoweth, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff was struck and injured by a falling wall while he was assisting defendants Morford and Prentice dba Jim Morford Construction (Morford), the framing subcontractors for a house construction project, in their efforts to raise and place the wall. He brought this action against Morford and The L.E. Wallman Co. (Wallman), the general contractor, alleging that Morford was negligent in connection with the raising of the wall, that Wallman is vicariously liable as Morford's employer for the subcontractor's negligence and that Wallman was itself negligent in a variety of respects, including the hiring of the subcontractors "when [they] did not have adequate and proper background and experience for such work." The trial court granted Wallman's motion for summary judgment and entered a final judgment for Wallman pursuant to ORCP 67B, from which plaintiff appeals. We reverse and remand.

The principal issue is whether Morford was Wallman's employe, for whose negligence it can be held liable on the basis of *respondeat superior,* or an independent contractor. Plaintiff argues, *inter alia,* that there was evidence in the summary judgment proceeding that Wallman's president made recurrent visits to the construction site and "was constantly pressuring Morford to get [the] job done faster." Therefore, according to plaintiff, there was a question of fact as to Wallman's right to control Morford's work and that question must be resolved by a factfinder before the legal question of Morford's independent or employe status can be decided. *See Woody v. Waibel,* 276 Or 189, 192-93, n 3, 554 P2d 492 (1976); *Sugura v. McLaughlin,* 79 Or App 69, 717 P2d 1251, *rev den* 301 Or 338 (1986).

Wallman responds:

"Plaintiff's assertion that Wallman exerted 'unrelenting pressure to hurry' is both irrelevant to the issue of control and is a gross mischaracterization of the evidence. Morford, in his affidavit, stated merely that 'Lew Wallman talked to me a number of times about being slow and behind.' Wallman testified that he spoke to Morford and Prentice concerning the speed at which the framing job was progressing. This record hardly supports plaintiff's characterization of 'unrelenting pressure to hurry.' At any rate, the evidence of Wallman's discussions about speed is irrelevant concerning the issue of

control of the details of the work. Any construction project involves a series of jobs which must be performed within a certain time frame. That Wallman may have urged Morford to complete its framing in accordance with the construction timetable is merely an indication that Wallman had some control over the *end result,* not the *manner* in which the job was to be performed." (Emphasis Wallman's.)

There is a legal and an evidentiary component to Wallman's argument. The legal point is apparently based on the principle that we stated in *Soderback v. Townsend,* 57 Or App 366, 644 P2d 640, *rev den* 293 Or 394 (1982):

"A person who employs an independent contractor directs the contractor to accomplish a result and in that sense exercises some control over the contractor, but that control alone will not convert the independent contractor into an employee. For an employer to be vicariously liable for the torts of his employee, he must have the right to control not only the result but also the manner and means of accomplishing the result. The *right* to exercise control is decisive. *See, e.g., Meskimen v. Larry Angell Salvage Company,* 286 Or 87, 91, 592 P2d 1014 (1979). Whether that right exists is determined by examining the employment arrangement." 57 Or App at 369. (Emphasis in original.)

The problem with Wallman's legal argument is that the evidence here does not conclusively reveal whether any control that Wallman did or could exercise was concerned solely with the end result or also entailed directions about how to achieve that result. More fundamentally, Wallman overdraws the distinction. *Soderback v. Townsend, supra,* and other authorities espousing the same principle do not suggest that there is any mutual exclusivity between control over means and control over ends; their point is that one who contracts for a certain completed product or service does not have control over the contractor, for purposes of determining whether the latter is an employe or an independent contractor, simply because he tells the contractor why he is hiring him. It may be that the ultimate showing here will indicate that Wallman did nothing more than apprise Morford that it wanted Morford to finish the job that it had been hired to do. For purposes of summary judgment, however, the evidence is capable of supporting a contrary finding.

Wallman's evidentiary argument fails for a similar

reason. What it comes down to is that the evidence to which plaintiff can point as demonstrating a right of control is skimpy and attenuated and that, in his brief, plaintiff attempts to bolster that evidence with hyperbole. Wallman is correct about both the nature of the evidence and the nature of plaintiff's argument, but it is not correct that plaintiff needed more evidence to avoid a summary judgment. It was Wallman's burden to show that there was no question of fact relevant to the right of control. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978).

James Morford testified in his affidavit opposing summary judgment that Wallman's officer "talked with me a number of times about being both slow and behind" on the project in question and that, on other projects where the two had been associated, "Lewis Wallman gave me close supervision." Ron Pope, the plumbing subcontractor for the project, said in his affidavit that "Lew Wallman visited the jobsite two or three times each day" and that his "attitude about job progress was 'hurry up and get it done.' " It may be, as Wallman states, that plaintiff overcharacterizes the evidence as showing an "unrelenting pressure to hurry." The point, however, is that the evidence *does* show communication about the performance of the job and does *not* show conclusively that Wallman's intervention was devoid of any direction about the details of performance.

We agree with plaintiff that there is an unresolved question of material fact bearing on Wallman's right to control Morford. That conclusion makes it unnecessary for us to address the parties' arguments regarding factors other than the right to control which are germane to Morford's independent or employed status, except to note that we cannot decide the legal issue of which status Morford enjoyed before the factual and legal aspects of the right to control are determined.

The parties disagree about a number of other issues. Plaintiff did not segregate his allegations into separate claims,[1] and our disposition of the first issue makes the resolution of the other issues unnecessary to the decision of the

---

[1] No contention is made that there were separate claims which should have been stated separately.

appeal. Moreover, because a remand is necessary, we cannot be sure that the issues will remain in their present posture in the subsequent proceedings in the trial court. Although we hesitate to do so, for reasons of judicial economy and of our appropriate role in reviewing summary judgments, we will nevertheless address one of the other issues in the interest of providing guidance on remand.

Plaintiff contends that the evidence raises a question of material fact concerning his allegation that Wallman was negligent in hiring Morford. Wallman answers that the allegation goes only to Morford's background and experience, and the evidence on which plaintiff relies, pertaining to Morford's unlicensed and uninsured status, was not relevant to Morford's ability to perform the job. Although the question is close, we agree with Wallman. Neither the reasons for the lapse in Morford's licensure nor the fact of its being uninsured was relevant to the abilities which plaintiff contended that Wallman would have found Morford to be lacking had it made proper inquiry. Therefore, summary judgment on that question would have been proper at the time of the ruling, if it had been the only question in the case.

Plaintiff's other arguments for reversing the summary judgment do not require discussion other than to observe that, because plaintiff states only one claim, our holding that *a* triable question of fact exists means that summary judgment should not have been granted, and *all* factual questions in the case are therefore triable, whether or not the summary judgment would have been proper as to some of them at the time that it was allowed.[2]

Reversed and remanded.

---

[2] The ORCP 67B judgment did not purport to be final as to *particular issues* disputed by plaintiff and Wallman. The finality applied to Wallman as a party, notwithstanding the remaining controversy between plaintiff and the other defendants. Neither party suggests that our disposition can or should take any form except an outright affirmance or an outright reversal and remand.