Argued and submitted November 5, 2001, decision of Court of Appeals and
judgment of circuit court affirmed May 9, 2002

Cindy SCHAFF,
Personal Representative of
the Estate of Kevin Schaff, deceased,
*Petitioner on Review,*

*v.*

RAY'S LAND & SEA FOOD CO., INC.,
an Oregon corporation,
*Respondent on Review.*

(99CV0025; CA A110162; SC S48360)

45 P3d 936

J. Michael Alexander, of Swanson, Lathen, Alexander & McCann, P.C., Salem, argued the cause and filed the briefs for petitioner on review.

Christopher Hatfield, of Hurley, Lynch & Re, P.C., Bend, argued the cause and filed the briefs for respondent on review.

BALMER, J.

De Muniz, J., dissented and filed an opinion in which Durham and Riggs, JJ., joined.

**BALMER, J.**

This personal injury case requires us to determine whether the trial court erred in granting summary judgment for defendant. Plaintiff is the personal representative of the estate of Kevin Schaff, who died in a collision that Adam Stockert allegedly caused. Plaintiff claims that Stockert was defendant's employee and that defendant is vicariously liable to plaintiff for damages caused by Stockert's negligence. The trial court granted summary judgment for defendant, holding, as a matter of law, that Stockert was an independent contractor, rather than an employee of defendant, and that defendant therefore could not be liable for injuries caused by Stockert's negligence. The Court of Appeals affirmed without opinion. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 173 Or App 170, 21 P3d 664 (2001). For the reasons that follow, we affirm the decision of the Court of Appeals and the judgment of the trial court.

## I. FACTS

The historical facts relevant to the trial court's decision are not disputed. On June 2, 1998, Stockert was driving a pickup truck that collided with a pickup truck that Schaff was driving. Both men died as a result of injuries from the collision. As noted, plaintiff filed this negligence action against defendant arguing that, at the time of the collision, Stockert was defendant's employee.

Defendant is a closely held Oregon corporation with two shareholders, Raymond Frank and his wife. Frank purchased a "Land & Sea Food Company" franchise in 1982, which allowed him to use the registered "Land & Sea Food Company" trademark in Oregon. Shortly thereafter, he incorporated defendant. The business operates out of the Frank residence. Defendant purchases meat and fish products from brokers and resells those products. Defendant sells directly to some customers and, pursuant to written "dealership" agreements, also sells at wholesale to "dealers" who resell to ultimate customers. Stockert was one such "dealer."

Stockert and defendant signed a "dealership agreement" in January 1994. Among other things, the agreement

required Stockert to purchase all his meat and fish products from defendant, to promote the sale of defendant's products to Stockert's customers "at times and in a manner within [Stockert's] discretion," and to carry certain automobile insurance. The agreement also recited certain "understandings," including that Stockert had no authority to bind defendant to any contracts or obligations; that all Stockert's costs, expenses, obligations, and liabilities were "to be borne solely by himself"; and that Stockert, as a "self-employed individual," was subject to federal social security taxes and was not covered by state or federal unemployment compensation or state workers' compensation. The agreement also contained the following provision:

> "It is understood that [Stockert] is not an employee of [defendant], but is an independent contractor in business for himself. [Defendant] shall have no control over [Stockert's] mode of doing business."

The agreement was terminable at will by either party.

Defendant supplied Stockert with a refrigeration unit bearing the "Land and Sea Food Co." name, which Stockert placed in the back of a pickup truck that he leased from his daughter. He used the truck and refrigeration unit to deliver products to his customers. Defendant also supplied Stockert with brochures describing the products, which stated that the products "are expressly packaged for and distributed by contracted 'LAND & SEA' dealers." Defendant's president, Frank, "trained" new dealers by taking them on sales calls with him and, during that training, generally advised new dealers on selling techniques and suggested prices.

Stockert, however, was responsible for determining when and how to work, how many products to purchase, and what prices to charge to his customers. His income was based on the difference between what he charged his customers and his expenses, which included the amounts that he paid defendant for products. Dealers selected and established their own routes and, by informal oral agreement, generally did not sell in each other's territory. Stockert initially sold in the Eugene area, but then decided to start a route in central Oregon. Defendant did not provide Stockert with a customer list, and

defendant did not have, and never asked for, a copy of Stockert's customer list. Stockert worked out of his home. He had no listing as an independent business in the yellow pages, did no advertising, and had no workers' compensation insurance or employees.

Stockert typically would pick up products from defendant weekly or as needed, and Stockert had little contact with defendant other than when he purchased products. Stockert and other dealers did not, and were not expected to, report to defendant on a regular basis other than when they purchased products. Although most of Stockert's income came from selling defendant's products, he also purchased spices and vitamins elsewhere at wholesale for resale to his customers.

## II.   PROCEEDINGS BELOW

As noted, plaintiff alleged that defendant was Stockert's employer, that Stockert was acting in the course and scope of his employment when he negligently collided with Schaff, and that defendant therefore was vicariously liable for Schaff's injuries that Stockert had caused. Defendant filed a motion for summary judgment, arguing that it had no liability because, as a matter of law, Stockert was an independent contractor rather than an employee. Plaintiff filed a cross-motion for summary judgment asserting that, as a matter of law, Stockert was an employee and that partial summary judgment should be entered in plaintiff's favor. In the alternative, plaintiff opposed defendant's motion, arguing that, if Stockert was not an employee as a matter of law, a jury nevertheless could draw from the facts conflicting reasonable inferences as to Stockert's status and, therefore, that there were disputed issues of fact that precluded summary judgment for defendant. The trial court granted defendant's motion and denied plaintiff's motion on the ground that, as a matter of law, Stockert was an independent contractor. As noted, the Court of Appeals affirmed without opinion.

## III.   ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. ORCP 47 C. There is no genuine issue as to any material fact if, "based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.*[1] On review of a motion for summary judgment, we view the evidence and all reasonable inferences that may be drawn from the evidence in favor of the adverse party. *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 461, 31 P3d 421 (2001).

As we explain in detail below, defendant may be held vicariously liable for Stockert's negligence if defendant had the right to control the manner in which Stockert performed services for defendant. Plaintiff argues that, although the historical facts are undisputed, a jury could draw inferences from those facts that would permit it to conclude that a right to control sufficient to establish employee status existed in this case. Therefore, plaintiff argues, the trial court erred in granting defendant's summary judgment motion, because there was a genuine issue of material fact for the jury. Defendant argues that the trial court correctly concluded that Stockert was an independent contractor as a matter of law.

For the reasons that follow, we agree with defendant. Based upon the summary judgment record before us, viewed in a manner most favorable to plaintiff, we hold that no reasonable jury could conclude that defendant had a sufficient right to control Stockert's performance for him to be considered an employee. We, therefore, conclude that Stockert was an independent contractor as a matter of law.

## A. The "Right to Control" Test

Whether an individual is an employee or an independent contractor is a legal conclusion. That conclusion, however, depends on a factual determination of the extent to

---

[1] This case was pending in the trial court when a 1999 amendment to ORCP 47 C became effective; therefore, the amended version of ORCP 47 C applies. *See Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 457-58, 31 P3d 421 (2001) (describing 1999 amendment and application to pending cases). However, the 1999 amendment did not change the portion of ORCP 47 C quoted in the text and does not affect the analysis in this case.

which the purported employer has the right to control the performance of services by the individual. *Jenkins v. AAA Heating & Cooling, Inc.*, 245 Or 382, 386-87, 421 P2d 971 (1966). In *Jenkins*, this court stated:

> "While there is no simple measure of the extent to which an employer may control a worker in the performance of his task without creating a master-servant relationship, *control over performance remains the principal test*. The definition of a servant in the Restatement (Second), Agency, § 220(1) (1958), is generally accepted by most courts. It reads:
>
>> " 'A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.' "

*Id.* (emphasis added). *See also Meskimen v. Larry Angell Salvage Co.*, 286 Or 87, 91-92, 592 P2d 1014 (1979) (quoting *Jenkins* and *Restatement* test); *Jorgensen v. Richard*, 266 Or 263, 265, 512 P2d 991 (1973) (quoting *Restatement* test); *Wallowa Valley Stages v. Oregonian*, 235 Or 594, 598, 386 P2d 430 (1963) ("[T]he right of the employer to control the workman is the basis most commonly advanced for imposing liability upon the employer."); *Kowaleski v. Kowaleski*, 235 Or 454, 458, 385 P2d 611 (1963) ("Right by the master to control the conduct of the driver is the favorite approach of the courts, including this court.").

## B. *"Right to Control" Test and Role of the Jury*

■ The parties do not dispute that the right to control test is applicable here.[2] However, they disagree as to whether

---

[2] In her brief on the merits, plaintiff invites this court to reconsider whether the traditional "right of control" test used in the vicarious liability context should include a broader "nature of work" test similar to that which is used in cases arising under workers' compensation laws. *Compare Rubalcaba v. Nagaki Farms, Inc.*, 333 Or 614, 627, 43 P3d 1106 (2002) (workers' compensation laws require court to consider "nature of work" test and "right of control" test), *with Peeples v. Kawasaki Heavy Indust., Ltd.*, 288 Or 143, 146-47, 603 P2d 765 (1979) (questioning but acknowledging practice of using "right of control" as only test for imposing vicarious liability). However, that is not the legal question that plaintiff presented on review. *That* question is: "[W]hether * * * one's status as an employee or an independent contractor is decided by the jury when the facts are uncontroverted, but different inferences can be drawn from those facts." Moreover, nowhere else in her petition for review did plaintiff articulate with specificity the argument that she now seeks to advance. Accordingly, we decline to consider it. *See* ORAP 9.05(b) (petition for review must contain concise statement of legal question presented on

a court may permit a jury to draw inferences from undisputed historical facts regarding the right to control, when the inferences that are drawn for all practical purposes will decide the legal question whether an individual is an employee or independent contractor. In defendant's view, allowing the jury to draw such inferences improperly would allow the jury to decide a matter of law.

Defendant correctly points out that an individual's status as an employee or an independent contractor is a conclusion of law and, as such, typically would not be a matter for a jury to decide. However, in some situations, that legal conclusion will depend on the jury's determination of the facts regarding an employer's right to control the manner and performance of the work. In cases in which the facts or reasonable inferences support a conclusion that there is an employer-employee relationship, this court allows the jury to render a verdict as to the individual's employment status— although a conclusion of law—by way of resolving any conflicting facts or inferences on the basis of proper instructions.[3] This court has acknowledged that "this practice may not always lend itself to a fastidious application of the rule that the jury decides fact and the court decides law." *Wallowa Valley Stages*, 235 Or at 600.[4]

---

review and rule of law petitioner proposes to be established, if review allowed); *Parrott v. Carr Chevrolet, Inc.*, 331 Or 537, 541 n 3, 17 P3d 473 (2001) (declining to consider issue not presented in petition for review).

[3] Defendant argues that this court announced a contrary rule in *Woody v. Waibel*, 276 Or 189, 554 P2d 492 (1976). In that case, this court stated that "where there is no dispute as to what the arrangement is, the question of employee or independent contractor is one of law for the court." *Id.* at 192-93 n 3. We find *Woody*, a case decided with respect to workers' compensation statutes, to be of limited relevance to our discussion of the role of the court and jury in the context of common-law vicarious liability. *See, e.g., id.* at 193 ("The criteria in the workmen's compensation cases are keyed to the purpose of the workmen's compensation laws."). Moreover, contrary to defendant's assertions, *Woody* did not change this court's practice in vicarious liability cases of permitting a jury to decide between conflicting reasonable inferences relating to the right to control, drawn from undisputed facts, in arriving at a general verdict. *See Meskimen*, 286 Or at 91 (so demonstrating).

[4] *See also* Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, 3 *The Law of Torts* 340-41 (2d ed 1986) ("It is a commonplace today that questions of law are for the court and questions of fact for the jury, whatever the historical vicissitudes of this notion may have been. It is just as commonplace, at least in the profession, that this statement has never been fully true in either of its branches, and tells us little or nothing that is helpful.").

In *Wallowa Valley Stages*, for example, a driver who distributed newspapers and solicited customers for a publisher claimed that he was "self-employed" and that he received no direction from the publisher on the manner in which he was to perform services. 235 Or at 601-02. However, the facts also disclosed that "circulation representatives" of the newspaper frequently visited the driver. Those facts permitted an inference that the newspaper exercised control over the driver's method of operations which, in the court's view, was sufficient to permit a jury to conclude that the driver was the newspaper's employee. In holding that the trial court properly submitted the employee/independent contractor issue to the jury, this court stated:

> "Whether or not a given person is the servant or the contractor of another is ordinarily a question of law, where the facts are clear. Where the facts are in dispute, however, it becomes necessary to submit at least the questions of fact to the jury. If more than one inference may be drawn from the facts, the jury makes the selection in arriving at a general verdict."

*Id.* at 600.

This court applied the same rule but reached the opposite conclusion in *Jenkins*, when it affirmed a directed verdict in favor of the putative employer, holding that an individual was an independent contractor as a matter of law. 245 Or 382. In that case, a salesman for the defendant's furnace-cleaning business had signed a contract explicitly stating that he was an independent contractor. This court refused to submit to a jury the question of the salesman's employment status, explaining that, although in *Wallowa Valley Stages* there had been evidence that employer representatives had visited the driver frequently, there was "no such evidence" in *Jenkins*. *Id.* at 387. Thus, the court determined that there was no factual dispute for the jury to decide, because the facts and reasonable inferences drawn from them could not support a conclusion that the salesman was the employee of the furnace-cleaning business. *Id.* In so reasoning, the court reiterated its earlier holding:

> "As noted in *Wallowa Valley Stages v. Oregonian*, supra, the question whether a given person is a servant or an independent contractor ordinarily is one of law, if the facts are

not in dispute and if only one reasonable inference can be drawn from the facts."

*Id.* at 386.[5]

■■ In summary, the foregoing discussion of this court's case law establishes that whether an individual is an employee or an independent contractor for vicarious liability purposes is a question of law. However, that legal conclusion ultimately depends on a constellation of facts relating to the right to control. A jury or other factfinder must render a verdict on an individual's employment status if the facts and any reasonable inferences that the jury could draw from those facts support a conclusion that the putative employer had the right to control the putative employee's work performance. *See Wallowa Valley Stages*, 235 Or at 600 (jury selects between conflicting inferences in arriving at general verdict). If the facts and any reasonable inferences that a jury could draw from those facts would not support a conclusion that the putative employer had the right to control the putative employee's work performance, then there is no triable issue of fact, and a defendant is entitled to have the issue decided as a matter of law. *Jenkins*, 245 Or at 386. The court's determination may come in the form of a ruling on a motion for a directed verdict, as in *Jenkins*, or a ruling on a motion for summary judgment, as here.

## C. *Application of the "Right to Control" Test*

■ With those legal principles in mind, we turn once again to the undisputed facts that were before the trial court on the motion for summary judgment in this case. The dealership agreement described the relationship between Stockert and defendant. As noted above, the agreement recited that Stockert was an independent contractor, not an employee of defendant; that defendant had no control over Stockert's "mode of doing business"; and that Stockert and defendant had no authority to bind each other contractually.

---

[5] We note that *Jenkins* and *Wallowa Valley Stages* potentially are misleading in stating that the question of employment status *ordinarily* is one of law. *Jenkins*, 245 Or at 386; *Wallowa Valley Stages*, 235 Or at 600. That question is *always* one of law, but this court has determined that it must be submitted to the jury when the underlying facts are in dispute or more than one reasonable inference relating to the right to control can be drawn from those facts.

Although terms such as those in a dealer or distributor agreement are not dispositive of whether the dealer is an independent contractor, they are evidence of such a relationship. *Jenkins*, 245 Or at 384-85. In any event, we see no inference that a jury could draw from the dealership agreement in favor of plaintiff's position that defendant had a right to control Stockert.

Further, we do not think, based on the other facts in the record, that a jury reasonably could infer that Stockert and defendant operated in a manner inconsistent with the terms of their agreement. Frank testified that defendant exercised no control over the manner in which Stockert conducted his business, other than the requirement that Stockert not sell competing products. Stockert was free to conduct his business as he saw fit. There is no evidence that defendant visited Stockert or his customers or decided how often Stockert worked. Defendant did not control the prices that Stockert charged, the quantity of products he sold, the manner of sales, or the customers to whom he sold. Stockert was permitted to, and did, sell noncompeting products that he purchased from wholesalers other than defendant.

Neither could a jury draw inferences in favor of plaintiff's position from the means by which Stockert earned money from the sale of the products. Stockert received no wages, commissions, reimbursements, guarantees, or payments from defendant. His income consisted solely of the difference between the amounts that he collected from his customers and his expenses, which included the cost of products that he purchased from defendant and other wholesalers. Stockert paid all his own expenses, including insurance, took all risk of loss on his sales, and received all benefit of any gain.

Plaintiff points to other facts. She notes that defendant was the exclusive supplier of meat and fish products to Stockert and supplied him with a refrigeration unit and promotional literature; that Stockert did not hold himself out as a separate enterprise; that Stockert did not possess special skills; and that Stockert worked for defendant for over four years. She argues that those facts and the reasonable inferences that a jury could draw from them, viewed in the light

most favorable to plaintiff, would allow a reasonable jury to conclude that defendant had a sufficient right to control the manner in which Stockert conducted his sales to give rise to vicarious liability.

We disagree. Those facts provide an insufficient basis to conclude that, "with respect to the physical conduct in the performance of the services[,] [Stockert was] subject to [defendant's] control or right to control." *Restatement (Second) of Agency* § 220(1) (1958). Given the undisputed facts regarding the financial arrangement between Stockert and defendant, and the level of control that Stockert exercised over the manner in which he undertook to sell the products, we conclude that the facts and inferences support only the conclusion that defendant did not have a sufficient right to control Stockert such that he could be considered an employee.

The dissent contends that a jury could find that some of the 10 nonexclusive factors identified in the *Restatement (Second) of Agency*, section 220, are present and provide sufficient evidence to allow the jury to conclude that Stockert was an employee of defendant (*see Kowaleski*, 235 Or at 460-61 (discussing relevance of *Restatement* factors in determining control)). *Schaff*, 334 Or at 110-11 (De Muniz, J., dissenting) (setting out *Restatement* factors). That conclusion is inconsistent with this court's decisions, which emphasize that "control over performance remains the principal test," *Jenkins*, 245 Or at 387, and which hold that the absence of control may be found, as a matter of law, despite evidence of one or more of the subsidiary factors identified in the *Restatement*, *see id.* at 384-87 (describing evidence consistent with several *Restatement* factors, but holding no "right to control" as matter of law).

The dissent's conclusion also is inconsistent with this court's decision in *Jenkins*, the facts of which are strikingly similar to this case. As noted, *Jenkins* involved a traveling salesman for a furnace-cleaning company. 245 Or 382. Like Stockert, he signed a contract as an independent contractor that required him to purchase automobile insurance and prohibited him from contracting on behalf of the company. The contract also prohibited the salesman from

employing others or advertising, although, like Stockert, he was free to sell other noncompeting products. The company provided the salesman with an order book necessary to perform the work. The relationship could be terminated at will, and the salesman was free to work at a time and in a manner in which he saw fit. *Id.* at 384-86. This court concluded that the foregoing facts and the inferences a jury could draw from them were insufficient to support the conclusion that the company had a right to control the salesman and, thus, that the salesman was not an employee. *Id.* at 387.

The facts and inferences that plaintiff and the dissent claim are sufficient to support a conclusion that defendant had a right to control Stockert are, in our view, not materially different from those in *Jenkins*. For example, plaintiff argues that the facts and inferences support the conclusion that defendant was Stockert's employee because

> "[t]here can be little question that neither Mr. Stockert, nor the dealers in general, actually have a distinct occupation or business. They all work from their homes, and Mr. Stockert made no pretense of holding himself out as a separate enterprise. He had no cards, no advertisements, no yellow page listing, no place of business, and no worker[s'] compensation insurance."

We fail to see how those facts are distinguishable from the facts in *Jenkins*, in which the salesman worked door to door or used a telephone, and did no advertising of any kind. 245 Or at 384. Similarly, plaintiff argues that the fact that the relationship between Stockert and defendant was terminable at will is "consistent with an employer/employee relationship" and, thus, could support a conclusion that such a relationship existed. Again, we fail to see the significance of that fact in light of *Jenkins*, where the relationship between the salesman and the furnace-cleaning company also was terminable at will. *Id.* at 385.

Indeed, to the extent that the cases *are* distinguishable, the facts in this case show that defendant had even less right to control its salesmen than did the defendant in *Jenkins*. First, the defendant in *Jenkins* reserved the right to reject, for any reason, any order its salesmen had negotiated and to refuse to pay commissions on those orders. 245 Or at

384. In this case, because of the nature of the relationship—namely, Stockert purchased the products that he sold—defendant lacked similar control over the transactions between Stockert and his customers. Second, the defendant in *Jenkins* informed its salesmen that they were expected to make 10 to 12 sales a month. *Id*. at 385-86. No similar expectations were placed on Stockert. It is undisputed that defendant had no requirement that dealers devote even a minimum number of hours to selling products purchased from defendant. Finally, the defendant in *Jenkins* paid its salesmen on commission and on a piece-work basis, a practice that is at least consistent with an employer/employee relationship. *Id*. at 384. Here, defendant did not pay Stockert by commission or otherwise, but simply sold products to him for resale. The difference in compensation arrangements further demonstrates that defendant had less of a right to control Stockert's performance than the defendant in *Jenkins* had over the performance of its salesmen.[6]

Neither plaintiff nor the dissent suggests that *Jenkins* was decided incorrectly. Indeed, plaintiff does not cite *Jenkins* in any of her briefing to this court, much less attempt to distinguish it. In light of both the factual similarities between *Jenkins* and this case and, as noted above, the relevant differences, we conclude that the same disposition is warranted here. The trial court properly concluded, as a matter of law, that Stockert was not an employee of defendant. Accordingly, the trial court correctly granted defendant's motion for summary judgment.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**DE MUNIZ, J.,** dissenting.

In *Rubalcaba v. Nagaki Farms, Inc.*, 333 Or 614, 43 P3d 1106 (2002), this court held that, as a matter of law, an individual who owned and maintained his own truck, and who, along with other owner-drivers, occasionally hauled

---

[6] In light of our comparison of the facts in *Jenkins* with those here, we fail to comprehend how the dissent nonetheless concludes that, in *Jenkins*, "there was a complete absence of control" exercised by the defendant over its salesmen, without reaching the same conclusion with respect to this case. 334 Or at 110 n 1 (De Muniz, J., dissenting).

onions for a farmer to the processor, was a worker and the farmer a subject employer under the workers' compensation statutes. That conclusion was based on this court's application of the judicially created "right to control" and "nature of the work" tests. I joined the opinion in *Rubalcaba,* because I concluded that this court's cases applying the "right to control" and "nature of the work" tests compelled that result. I am not willing, however, to do the conceptual "about face" that the majority does here, to conclude that plaintiff is not entitled to have a jury apply essentially the same considerations in deciding whether, for purposes of vicarious liability, there was a master-servant relationship between defendant and Stockert.

This case is only at the summary judgment stage. Thus, a jury must be permitted to decide whether there was a master-servant relationship between defendant and Stockert, sufficient to impose vicarious liability, unless we can declare that, on this record, *"viewed in a manner most favorable to the [plaintiff], no objectively reasonable juror could return a verdict for the [plaintiff] * * *."* ORCP 47 C (emphasis added).

The majority acknowledges the following:

"In cases in which the facts or reasonable inferences support a conclusion that there is an employer-employee relationship, this court allows the jury to render a verdict as to the individual's employment status—although a conclusion of law—by way of resolving those conflicting facts or inferences on the basis of proper instructions."

334 Or at 101.

However, having acknowledged the jury's role in deciding whether vicarious liability should be imposed, the majority proceeds to ignore it. For the reasons that follow, I respectfully dissent.

This court "frequently [has] said or assumed that the existence of a master-servant relationship is to be determined according to whether the master had the right to control the conduct of the alleged servant." *Peeples v. Kawasaki Heavy Indust., Ltd.,* 288 Or 143, 146, 603 P2d 765 (1979). The majority follows that approach, concluding that, for purposes

of vicarious liability, the "right to control" test is the only test that should be applied. 334 Or at 100-01. As I point out below, that conclusion is dubious because, in earlier tort cases, this court has indicated that a jury may consider factors similar to those identified in the "nature of the work" test in deciding whether to impose vicarious liability. Nevertheless, even assuming that the court should use only the "right to control" test to determine whether the record presents a dispute as to a material fact, the majority errs in its application of that test. There is evidence in the record, which I list below, that would permit a juror reasonably to infer that defendant had the "right to control" the performance of Stockert's work.

First, defendant had the right to terminate the employment relationship at any time without contractual liability. In *Rubalcaba*, this court emphasized that an *"employer's power to terminate [is] particularly strong evidence of the right to control*, because the 'effect of [the power to terminate] possessed by the company required respondent to conduct this operation at all times as it might please the logging company and its manager.'" *Rubalcaba*, 333 Or at 620 (citing *Bowser v. State Indus. Accident Comm.*, 182 Or 42, 56, 185 P2d 891 (1947)) (emphasis added). Although that same reasoning should apply here, the majority accords no weight at all in this case to the right to discharge.

Second, defendant had economic control over Stockert by requiring Stockert to purchase his entire meat and fish requirements from defendant. Defendant supplied the products to Stockert on credit, which Stockert settled with defendant on a 30-day basis. As security for the financial arrangement, the contract required Stockert to prepay $1,000 to defendant.

Third, defendant provided the most important equipment necessary to perform Stockert's work by furnishing Stockert with a $5,000 refrigeration unit with the name "Land and Sea Food Co." on its side.

Finally, defendant supplied Stockert with brochures describing the products, and defendant "trained" salesmen, like Stockert, by taking them on sales calls and advising them of effective selling techniques and suggested prices.

A jury, considering those factors, reasonably could conclude that defendant exercised a degree of control over the manner in which Stockert performed his work, sufficient to justify the imposition of vicarious liability.[1] That is all that ORCP 47 requires at this stage of the proceedings. The majority incorrectly concludes otherwise and deprives plaintiff of the jury trial to which she is entitled.

There is, however, more to this issue than the majority acknowledges. In the past, this court has commented that, in determining the existence of a master-servant relationship for purposes of vicarious liability, a jury may consider the various factors outlined in *Restatement (Second) of Agency*, section 220 (1958). *See Wallowa Valley Stages v. Oregonian*, 235 Or 594, 386 P2d 430 (1963) (so stating). Section 220 provides:

"(1)  A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2)  In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a)  the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b)  whether or not the one employed is engaged in a distinct occupation or business;

"(c)  the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d)  the skill required in the particular occupation;

---

[1] The majority relies extensively on this court's decision in *Jenkins v. AAA Heating*, 245 Or 382, 421 P2d 971 (1966). According to the majority "the facts of this case are not materially different from those in *Jenkins*, * * *." 334 Or at 106. In that case, there was a complete absence of control over the manner in which the salesmen did their work. All that the heating company did was provide an order book and pay commissions for any order brought to the company. Here, as set out earlier, defendant had the right to terminate the relationship at will, provided key equipment, supplied brochures regarding the product and the product itself, and bore some economic risk in the sale of the product. Those facts alone are sufficient to distinguish this case from *Jenkins*.

"(e)   whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f)   the length of time for which the person is employed;

"(g)   the method of payment, whether by time or by the job;

"(h)   whether or not the work is a part of the regular business of the employer;

"(i)   whether or not the parties believe they are creating the relation of master and servant; and

"(j)   whether the principal is or is not in business."

(Footnote omitted.)

In *Wallowa Valley Stages*, this court, referring to the factors identified in section 220 of the *Restatement*, stated:

"If the foregoing considerations are used in the trial of jury cases, the trial court ultimately has to tell the jurors, at least in a general way, how to apply to the case at hand their affirmative or negative answers to the Restatement tests. They must arrive at a general verdict based upon their decision that the actor in a given case was, or was not, a servant. *Thus, the trial courts understandably rely strongly upon the element of control, or the right to control, and in their instructions relate to the general concept of control such other suggestions, like those found in § 220 of the Restatement, as they may see fit to use.*"

235 Or at 599 (emphasis added).

As applicable to this case, *Wallowa Valley Stages* clearly established that, in determining whether the relationship between defendant and Stockert is of a nature sufficient to justify the imposition of vicarious liability, a jury is entitled to consider, and may give some weight to, the factors outlined in section 220 of the *Restatement*. The factors outlined in section 220 of the *Restatement* closely parallel the "nature of work" test that this court applied in *Rubalcaba* to hold as a matter of law that the claimant was a worker and that the farmer was a subject employer. *See also Woody v.*

*Waibel*, 276 Or 189, 554 P2d 492 (1976) (identifying and applying the "nature of the work" test factors).

Here, a jury could find that a number of the factors identified in the *Restatement* are present and, when considered along with the primary right to control factors, are sufficient to impose vicarious liability.

Evidence conforming to the *Restatement* factors include the following: Defendant is a corporation that sells meat and fish products. The sale of defendant's products to the public is accomplished by salesmen, like Stockert, who sell to customers in certain geographic areas.

Stockert was not engaged in a distinct occupation, as usually is the case with independent contractors. The skill used in selling meat and fish products is typical of a route salesman, and that relationship usually is one of master-servant. Stockert had no independent business listing in the yellow pages of the telephone directory, did no advertising, and used business cards identifying himself as "Adam Stockert, *a representative of Land & Sea Food Co.*" (Emphasis added.) Stockert had no employees of his own. At the time of Stockert's death, the relationship had existed for four years. Stockert carried commercial auto insurance in the amount of $300,000, endorsed to show defendant as an additional insured.

In *Wallowa Valley Stages*, a jury had determined that Badgett, who distributed Oregonian newspapers in eastern Oregon, was an employee of the Oregonian for purposes of vicarious liability. On appeal to this court, the Oregonian contended that, as a matter of law, Badgett was an independent contractor and the jury should not have been permitted to decide the issue. In affirming the judgment against the Oregonian, the court stated:

> "We do not hold that the amount of supervision exercised in the case at bar was sufficient to constitute Badgett an employee as a matter of law. Neither can we hold that Badgett was an independent contractor as a matter of law. *We hold that there was evidence from which the jury could draw its own inferences on the matter.*"

235 Or at 602 (emphasis added).

Conceptually, this case is indistinguishable from cases like *Wallowa Valley Stages*. The evidence of control and the evidence consistent with the factors identified in the *Restatement* are not, as a matter of law, sufficient one way or the other to define the relationship between defendant and Stockert. However, the record does contain evidence that is sufficient for a jury to decide whether the relationship is of the type that justifies the imposition of vicarious liability. That is all that is required under this court's cases.

Durham and Riggs, JJ., join in this dissenting opinion.