Argued and submitted January 13, decision of Court of Appeals reversed;
judgment of circuit court reversed, and case remanded to circuit court
for further proceedings April 16, 2009

## Cheryl VAUGHN,
*Petitioner on Review,*

*v.*

## FIRST TRANSIT, INC.,
a Delaware corporation;
First Transit Transportation, LLC,
a Delaware corporation;
and Clara Zavoral,
*Respondents on Review,*

*and*

## PORT OF PORTLAND,
*Intervenor.*

(CC 0603-03099; CA A133676; SC S055981)

206 P3d 181

Helen C. Tompkins, Law Office of Helen Tompkins, P.C., Lake Oswego, argued the cause and filed the brief for petitioner on review.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the briefs for respondents on review.

William F. Gary, Harrang Long Gary Rudnick, P.C., Portland, argued the cause and filed the brief for intervenor Port of Portland. With him on the brief were Sharon A. Rudnick and Susan D. Marmaduke.

Kathryn H. Clarke, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

C. Randall Tosh, Salem, filed a brief for *amici curiae* League of Oregon Cities, Association of Oregon Counties, Special Districts Association of Oregon, Multnomah County, Marion County, Deschutes County, Clackamas County, Metro, City of Portland, City of Eugene, City of Salem, City of Boardman, City County Insurance Services, Housing Authority of Portland, Oregon School Boards Association, and City of Hood River.

Karla H. Ferrall, Assistant Attorney General, filed a brief for *amicus curiae* State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This tort case requires us to determine the meaning of the word "agent" for purposes of the Oregon Tort Claims Act (OTCA). The OTCA permits tort claims against public bodies, with certain limitations, and provides that the sole cause of action for any tort committed by officers, employees, and agents of a public body who are acting within the scope of their employment or duties is one against the public body.[1] Plaintiff was injured while riding on an airport shuttle bus. She filed this action against the shuttle bus driver and the driver's employer, a transportation company that provides shuttle bus service for the Port of Portland (the Port) under a contract. Defendants claimed that, as "agents" of the Port, a public body, plaintiff did not have a cause of action against them, but only against the Port. The trial court agreed that plaintiff did not have a cause of action against defendants and granted their motion for summary judgment.[2] Plaintiff

---

[1] ORS 30.265(1), one of several statutes that together comprise the OTCA, provides, in part:

"[E]very public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties * * *. *The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties* and eligible for representation and indemnification under ORS 30.285 or 30.287 *shall be an action against the public body only*. The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action or suit. No other form of civil action or suit shall be permitted. If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant."

(Emphasis added.) Because the accident giving rise to the lawsuit in this case occurred in 2004, the version of the OTCA then in effect applies. That statute has since been amended in ways that do not affect our analysis. For ease of reference, we refer to the present version of the OTCA.

[2] The trial court stated that the OTCA "immunizes" agents of public bodies from liability for torts committed within the scope of their agency, and the parties generally discuss the issue in this case as whether defendants have "immunity." However, the OTCA does not, by its terms, "immunize" those persons. The effect of the OTCA is to protect an officer, employee, or agent from tort liability in certain circumstances by providing that the sole cause of action of an injured person is one against the public body and that the public body "shall be substituted as the only defendant." ORS 30.265(1). The use of the term "immunity" to describe that protection should be avoided because the OTCA uses that term in a different context— and subsection—that is not involved in this case. *See* ORS 30.265(2) (providing that a public body is "immune" from liability for injuries caused by an officer, employee, or agent, if the officer, employee, or agent "is immune from liability").

appealed, and the Court of Appeals affirmed without opinion. *Vaughn v. First Transit, Inc.*, 218 Or App 375, 180 P3d 185 (2008). We allowed review and now reverse.

■    When reviewing a grant of summary judgment, we view the facts and all reasonable inferences that we may draw from those facts in the light most favorable to the non-moving party—here, plaintiff. *See Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004) (stating standard). Defendant First Transit, Inc., contracted with the Port, a public body that owns and operates Portland International Airport, to provide shuttle services between the airport terminal and three airport parking lots. Under that contract, the Port supplied office space, utilities, buses, radios, and fuel to First Transit and assumed responsibility for bus repair and licensing. First Transit provided the labor, along with any equipment and materials not provided by the Port. As a general matter, decisions regarding hiring and training new employees were left to First Transit. When hiring new employees, First Transit agreed to adhere to all state and federal laws, "ensure that all drivers are properly qualified and licensed," "research the driving record of each driver [and] ensure that appropriate safe driving history standards are met," implement a drug testing program including random drug tests, and subject each applicant to a criminal history check. First Transit also agreed to "establish a written employee training program," make a "good faith effort" to modify that program if the Port requested a modification, ensure appropriate training—including driver training, customer service training, and airport security training—and keep employee training records, making those records available to the Port upon the Port's request. First Transit also agreed to provide the Port with all "reasonable reports requested by the Port," including "a monthly report of hires and terminations during the previous month." The contract provided certain "appearance and behavior" standards for all employees, and the Port retained the right to require First Transit to "temporarily or permanently bar" any employee from performing the duties enumerated in the contract.

    In the event of an accident, First Transit agreed to "immediately notify the Port Police," to "take photographs to document the circumstances and effects of any accident," and

to provide those photographs to the Port. Additionally, First Transit agreed to maintain automobile liability insurance "covering liability for bodily injury and property damage arising from the use, loading, and unloading of the Port's buses," along with commercial general liability insurance "covering liability for personal injury, bodily injury, death, and damage to property (including loss of use thereof) arising from, or in any way related to," the shuttle system. The limits of those plans were to be not less than $3,000,000 per incident. Finally, First Transit agreed to indemnify the Port against any claims arising out of the negligence of First Transit or its employees.

In 2004, plaintiff was injured while riding on a shuttle bus driven by defendant Zavoral, an employee of First Transit. Plaintiff sued defendants, alleging that Zavoral negligently had caused plaintiff's injuries when Zavoral "unnecessarily, suddenly and unexpectedly slammed on the vehicle's brakes to avoid a small rodent in the roadway," which caused plaintiff to be "thrown against a metal luggage rack, striking her shoulders and face."[3]

Defendants moved for summary judgment, arguing that they were "agents" of the Port at the time of the accident and therefore, under the OTCA, any tort action must be brought against the Port only. ORS 30.265(1) provides that the "sole cause of action" of a person injured by the tort of an officer, employee, or agent of a public body acting within the scope of his or her employment or duties is "an action against the public body only."[4] Thus, under the OTCA, public officers,

---

[3] In addition to Zavoral and First Transit, Inc., plaintiff sued First Transit Transportation, LLC. Defendants argued before the trial court and the Court of Appeals that First Transit Transportation, LLC, should not have been named as a defendant because it is not Zavoral's employer and is not a party to the contract between First Transit, Inc., and the Port. However, defendants never filed a motion to dismiss First Transit Transportation, LLC, and neither lower court addressed the issue. There is, therefore, no issue before this court with respect to the status of that defendant.

[4] The "sole cause of action" aspect of ORS 30.265(1) applies only when the officer, employee, or agent is "eligible for representation and indemnification under ORS 30.285 or 30.287." Those statutes provide that the indemnification requirement does not apply "in case of malfeasance in office or willful or wanton neglect of duty" and also set out the procedures that officers, employees, and agents must follow to request that the public body defend a claim against them. The Port argues that defendants were not "eligible for representation and indemnification" and

employees, and agents are not subject to actions for torts committed while acting within the scope of their employment or duties, and the injured person must bring any claim based on their actions against the public body only. Defendants argued that, based on the contract described above, they were "agents" of a public body under the meaning of the OTCA and that Zavoral had been acting within the scope of her employment—which was within the scope of First Transit's duties as an agent for the Port—when the accident occurred. Defendants contended that, as a result, "the sole cause of action" for Zavoral's negligence was one against the public body, the Port. As noted, the trial court agreed and granted defendants' motion for summary judgment. Plaintiff appealed, and the Court of Appeals affirmed without opinion.

■  This case involves two alleged "agency" relationships: Zavoral as the agent of First Transit, and First Transit as the agent of the Port. It is undisputed that Zavoral was an agent of First Transit; more specifically, she was an employee of First Transit acting within the scope of her employment at the time of the accident. As Zavoral's employer, First Transit ordinarily would be liable for claims arising out of Zavoral's allegedly negligent driving. *See Minnis v. Oregon Mutual Ins. Co.*, 334 Or 191, 201, 48 P3d 137 (2002) (employer liable in tort for acts of employees when acting within the scope of employment). The issue in this case, however, is whether First Transit and Zavoral are "agents"—as that term is used in the OTCA—of the Port so as to be protected from tort claims by ORS 30.265.[5]

We begin with an overview of the statutory scheme. In 1967, the legislature enacted the OTCA and abrogated, in

therefore did not fall within the terms of ORS 30.265 because they did not fulfill the procedural requirements in ORS 30.285 and ORS 30.287. Because we conclude that defendants were not "agents" for purposes of ORS 30.265(1), we do not reach the Port's argument.

[5] If First Transit is an agent of the Port, then Zavoral—an employee who First Transit hired to aid in performing its duties for the Port—is also an agent of the Port. *See Restatement (Third) of Agency* § 3.15(1) (2006) ("A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal. The relationships between a subagent and the appointing agent and between the subagent and the appointing agent's principal are relationships of agency * * *.").

part, the state's sovereign immunity. As originally enacted, the OTCA permitted claims against public bodies—with some limitations—for their own torts and for the torts committed by their "officers, employe[e]s and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." Or Laws 1967, ch 627, § 2. The original statute provided that the public body was permitted, but not required, to "defend, save harmless and indemnify any of its officers, employe[e]s and agents * * * against any tort claim or demand * * * arising out of an alleged act or omission occurring in the performance of duty." *Id.* § 7. In 1975, the legislature amended the OTCA to provide for mandatory indemnification by the public body. Or Laws 1975, ch 609, § 16. Finally, in 1991, the legislature eliminated any tort claim against those officers, employees, and agents who are eligible for indemnification, making the sole cause of action one against the public body. Or Laws 1991, ch 861, § 1. *See generally Clarke v. OHSU*, 343 Or 581, 588-90, 175 P3d 418 (2007) (discussing history of OTCA, including effect of 1975 and 1991 amendments).

As noted, because First Transit does not claim to be an "officer" or "employee" of the Port, the question is whether it is an "agent" as that term is used in the OTCA. The OTCA does not contain a definition of agent, so we begin by looking to the well-established legal meaning of that term. *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used.").

At common law, "agency" was defined as a relationship that "results from the manifestation of consent by one person to another that the other shall act *on behalf and subject to his control*, and consent by the other so to act." *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 617, 892 P2d 683 (1995) (emphasis added; internal quotation marks omitted). The "agent" is the person in that relationship who acts on behalf of the other, the "principal." *Restatement (Second) of Agency* § 1 (1958).

■■ We first consider how much control is required for an agency relationship to exist.

> "Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms. Additionally, a principal has the right to give interim instructions or directions to the agent once their relationship is established."

*Restatement (Third) of Agency* § 1.01 comment f (2006). Thus, the principal's "control" over what the agent shall or shall not do is necessary for an agency relationship, but it is not, on its own, sufficient to create such a relationship. Agency does not result, for example, when an individual (or entity) simply agrees to provide services for another, even if the other person—through contract—is able to establish general standards for performance and in that way "control" the individual. That individual simply may be a contractor performing services for another, and not an "agent" at all. Instead, "[t]he power to give *interim* instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* (emphasis added).

Even the ability to control in detail another's actions does not alone create an agency relationship; to qualify as an agent, one must also agree to act "on [another's] behalf." Thus, for example, a subordinate employee is not the agent of a supervisor simply because the supervisor has full control over the employee's work activities. Instead, both the subordinate and the supervisor are agents of their common employer, on whose behalf they have agreed to work. *See Restatement (Third)* § 1.01 comment g (giving examples). In sum, to be an "agent"—using the well-defined legal meaning of that term—two requirements must be met: (1) the individual must be subject to another's control; and (2) the individual must "act on behalf of" the other person.

Our analysis does not end there, however. When interpreting statutes, we also consider the context of the statutory provision, including the preexisting common law and the statutory framework within which the statute was enacted. *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998). As noted, the legislature originally enacted the OTCA to partially waive sovereign immunity, by permitting claims against public bodies for their own torts and, vicariously, for

the torts of their officers, employees, and agents. That is, the legislature allowed injured persons to assert—albeit with some limitations—the same tort claims against public bodies that they could, at common law, assert against other tort-feasors. Considering that context, we turn to a discussion of common-law principles of agency and vicarious liability.

Understanding agency law in the context of vicarious liability requires an understanding of two types of agents: employees (or "servant" agents) and agents who are not employees (sometimes referred to as "nonservant" agents).[6] "All servants are agents and all masters, principals. However, all principals and agents are not also masters and servants." *Kowaleski v. Kowaleski*, 235 Or 454, 457, 385 P2d 611 (1963). The common law distinguishes between the two types of agents using a "right-to-control" test. An agent is an employee if the principal has the right to control the physical details of the work being performed by the agent; in other words, the principal directs not only the end result, but also controls *how* the employee performs the work. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 100, 45 P3d 936 (2002). In contrast, when the agent retains control over the details of the manner in which it performs its duties, that agent is a nonemployee agent. *Restatement (Second) of Agency* § 220 comment e.

Distinguishing between employees and agents who are not employees is important for vicarious liability purposes, because a principal's liability for the torts of its agents varies based upon the type of agent. In general, a principal is liable for all torts committed by its employees while acting within the scope of their employment. *Minnis*, 334 Or at 201. But a principal ordinarily is *not* liable in tort for physical injuries caused by the actions of its agents who are not employees. *Jensen v. Medley*, 336 Or 222, 230, 82 P3d 149 (2003). Rather, a principal is vicariously liable for an act of its nonemployee agent only if the principal "intended" or "authorized the result [ ]or the manner of performance" of that act. *Restatement (Second)* § 250; *see also Jensen,*

---

[6] The *Restatement (Third)* eliminates the terms "master" and "servant," as well as variations such as "nonservant," *see id.* § 2.04 comment a, but the prior editions and many cases continue to use those terms.

336 Or at 231 (principal liable for acts of nonservant agents only if those acts "within the actual or apparent authorization of the principal").[7] In other words, for a principal to be vicariously liable for the negligence of its nonemployee agents, there ordinarily must be a connection between the principal's "right to control" the agent's actions and the specific conduct giving rise to the tort claim.

This court applied those principles in *Jensen*, where the issue was whether an international union could be vicariously liable for the wrongful termination of an employee of an affiliated local union by the local union's manager. We explained that

> "whether one entity can be liable to a third party for the wrongful conduct of another entity in a context other than master-servant depends not only on whether the second entity is an 'agent' of the first for some purpose, but also on whether the principal authorized or intended the agent to act on its behalf *with respect to the conduct that gave rise to the third party's claim.*"

336 Or at 237 (emphasis added). Applying that rule, we held that an instruction permitting the jury to find the international vicariously liable for the wrongful acts of the local simply because it had the "right to control" the local in the abstract was erroneous. That instruction was erroneous because it failed to ask whether the jury found that the "[l]ocal had been authorized to act for and had been subject to the control or right to control of [the international] *with respect to [the local's] hiring and firing of an employee.*" *Id.* at 238 (emphasis in original). We observed that, if a principal were liable for *all* the torts of an agent performed in furtherance of the principal's business, whenever the principal had a "right to control" the agent in *some* respects (which was necessary to create the agency in the first place), then the principal could face liability for conduct of the agent that the principal did not in fact control or have a right to control. "The law of agency," we stated, "does not extend that far." *Id.*

---

[7] Of course, a principal may be directly liable for the tortious act of an agent if the principal had "a duty to have the act performed with due care," *Restatement (Second)* §§ 214, 250, or if the principal itself was negligent in hiring, instructing, or supervising the agent. *Id.* § 213.

██ ██ The comments to the *Restatement* provision regarding liability for nonemployee agents expand on the requirement that, to be vicariously liable for the torts of such an agent, a principal must have a *right to control the physical details of the manner of performance of the conduct that is the basis for the tort claim*:

> "It is only when to the relation of principal and [nonservant] agent there is added that *right to control physical details as to the manner of performance* which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the *physical conduct* of the actor."

*Restatement (Second)* § 250 comment a (emphasis added). Similarly, a principal that "authorizes" a nonemployee agent to act on the principal's behalf is not, for that reason alone, liable when the agent injures a third party because the agent was negligent in carrying out its authorized activities. *See id.* at comment b ("There is no inference that because a principal has authorized an act to be done which would be non-tortious if done carefully, he is liable for the act of a non-servant if the latter was negligent in his performance."). Put differently, only when the principal's control over the agent with respect to the actions of the agent that gave rise to the tort claim is similar to the control that an employer exercises over an employee will the principal be vicariously liable for the negligence of its nonemployee agent.

With that understanding of when, at common law, a principal may be vicariously liable for the negligence of an agent who is not an employee, we return to the OTCA. The OTCA provides that the sole cause of action for a tort committed by a public body's "employees" *or* its "agents," when acting "within the scope of their employment or duties," is an action against the public body. ORS 30.265(1). Because the legislature used the word "agent" in addition to the word "employee," it apparently intended that statute to apply to at least some category of persons who are not subject to the kind of detailed control of performance by the public body so as to be employees, but who nevertheless act on behalf and under the control of the public body. But did the legislature intend to bring within the OTCA all torts of persons or entities that are "agents" under the common law?

■ The purpose of the OTCA provides important context for considering that question. *See Restatement (Second)* § 1 comment f ("Whether the word 'agent' as used in a statute corresponds to the [common-law] meaning * * * depends, with other factors, upon the purpose of the statute."). As discussed above, the legislature enacted the OTCA to abrogate sovereign immunity and make public bodies, with some limits, liable for their torts to the same extent as private persons and corporations. Given that purpose, it would not make sense to interpret the OTCA to bring *all* torts of a public body's common-law "agents" (when acting with the scope of their agency) within the statute. Such a definition would impose liability on the public body far beyond that imposed on private entities. As the discussion above demonstrates, principals ordinarily are vicariously liable for the torts of their nonemployee agents only when the principal had the right to control the physical details of the conduct of the agent that gave rise to the tort claim. In our view, when the legislature made public bodies vicariously liable for the torts of their "agents" through the OTCA, it intended to impose that same vicarious liability on public bodies for the torts of their nonemployee agents, subject of course to the specific procedural and other limitations of the OTCA. Thus, when the OTCA makes a public body liable for tort claims based on the conduct of an "agent" of the public body, it does not mean all tort claims involving *any* agent of a public body, but only those for which the agent's principal would be liable under common-law standards of vicarious liability.

■ Returning to the facts of this case, we consider whether First Transit and Zavoral were agents of the Port for purposes of asserting that, because of the OTCA, plaintiff's sole cause of action for her injuries based on Zavoral's allegedly negligent driving is one against the Port. The only evidence before us is the contract between First Transit and the Port. As discussed above, that contract demonstrates that First Transit agreed to act on behalf of the Port by providing shuttle bus service at the airport, and it gives the Port substantial control over First Transit's operations, including the ability "to give interim instructions." *See Restatement (Third)* § 1.01 comment f (explaining control in the context of agency). For example, the contract gives the Port the authority

to "unilaterally adjust" First Transit's annual operating budget and to take control of the shuttle buses in the event of an interruption in service. Therefore, First Transit was an "agent" of the Port, in the common-law meaning of that term, because it agreed to act on behalf of and subject to the Port's control. It follows that, for the Port to be vicariously liable under the OTCA for First Transit's (or Zavoral's) negligence—and for plaintiffs to be limited to bringing an action against the Port only—defendants must be able to show that the Port had the right to control the physical details of the manner of performance of the conduct giving rise to the tort—Zavoral's driving.

Defendants argue that the contract "leaves First Transit with very little discretion over how to [run the shuttle bus operation]" and point to several provisions in the contract that give the Port control over various aspects of the shuttle bus business. Plaintiff responds that the contract does not demonstrate that the Port maintained the right to control the physical details of the conduct giving rise to the claim, namely, the driving of First Transit's employees. *See Jensen,* 336 Or at 231, 236-38 (discussing principal's liability for actions of nonservant agents and focusing on specific allegedly wrongful conduct).

We agree with plaintiff. Although the Port retained the right to reject unilaterally any of First Transit's employees, including its operations manager, that provision is not equivalent to one expressly retaining the right to control the day-to-day performance of those employees. The contractual provision instead appears to be a way for the Port to protect its interests if First Transit hires (or, more likely, fails to fire) an employee whom the Port thinks is particularly incompetent. We recognize that the contract does provide other limits on First Transit's hiring; for example, First Transit was obligated to ensure that all its drivers were properly licensed. However, those general hiring standards do not serve to grant control to the Port over the day-to-day performance of First Transit's employees. The performance standards, as they relate to the drivers, are general requirements that First Transit "provide high quality customer service" and assure "the neat appearance, courtesy, efficiency, and conduct" of its employees. For the Port to be vicariously liable for

the negligent driving of First Transit's employees, the Port would have to have the same right to control that driving as it would have over the driving of its own employees.

The contract itself does not provide that the Port has the right to control the physical manner in which First Transit employees carried out their driving duties. Thus, the contract does not support the conclusion that First Transit or its employees, including Zavoral, were acting as agents of the Port for purposes of imposing vicarious liability on the Port for the alleged negligence of First Transit's shuttle bus drivers. Accordingly, defendants have not demonstrated that they are "agents" of the Port for purposes of ORS 30.265(1) and that plaintiff's only permissible tort action is one against the Port. The trial court therefore erred in granting defendants' motion for summary judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.