Argued and submitted October 6, 2010, affirmed May 4, petition for review denied August 18, 2011 (350 Or 573)

Tammy L. MATSON,
*Plaintiff-Respondent,*

*v.*

OREGON ARENA CORPORATION,
a corporation,
*Defendant-Appellant,*

*and*

ELLERBE BECKET, INC.,
a foreign corporation,
and Coast to Coast Event Services, Inc.,
a corporation,
*Defendants.*

Multnomah County Circuit Court
041212333; A139601

256 P3d 161

James N. Westwood argued the cause for appellant. With him on the briefs were Stoel Rives LLP, and Schwabe Williamson & Wyatt, P.C., and Daniel F. Knox.

Kathryn H. Clarke argued the cause for respondent. With her on the brief were Don Corson and Phillip C. Gilbert.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant Oregon Arena Corporation (OAC) appeals after a jury found it 50 percent at fault for injuries suffered by plaintiff when she fell from a railing at the Rose Garden arena. OAC asserts that the trial court erred in instructing the jury that any negligence of OAC's agent Coast to Coast Event Services, Inc. (Coast to Coast) is the negligence of OAC and in repeating that principle in a comment to the jury about the instruction. We affirm.

Plaintiff was seriously injured when she fell approximately 40 feet from a railing enclosing the 300-level smokers lounge during a Portland Trail Blazers basketball game at the Rose Garden. Plaintiff filed a complaint against OAC, the developer and owner of the arena, and Coast to Coast, the company that provided security services at the basketball game.[1]

Plaintiff and Coast to Coast settled before trial. Then plaintiff filed a motion *in limine*, asking the court to exclude evidence that Coast to Coast was formerly a party.[2] After the motion was granted, plaintiff filed a third amended complaint to conform the pleadings on the dismissal of Coast to Coast as a party. The third amended complaint alleged that, "[a]s a corporation, [OAC] acted through its officers, employees, and agents, including [Coast to Coast], *who were at all times material herein acting within the course and scope of those relationships.*" (Emphasis added.) The third amended complaint also provided that "[OAC] contracted with [Coast to Coast] to provide part of its security services at The Rose Garden." The third amended complaint listed nine specific allegations of negligence against OAC.

"[OAC] was negligent in one or more of the following ways:

"a. In choosing not to post any warning signs in the east 300 level outdoor smokers lounge to protect customers

---

[1] Plaintiff also filed suit against Ellerbe Becket, Inc., the designer of the Rose Garden. The trial court later granted Ellerbe Becket's motion to dismiss, and it is not a party to this appeal.

[2] OAC does not assign error to the trial court granting the motion *in limine*.

from the risk and danger of falling from the bench-like platform to the ground level below, such as of the type posted in the similar 200 level 'Preferred' or 'Club' and the 'Suite' level outdoors smokers lounges directly below the east 300 level outdoor smokers lounge;

"b.   In choosing not to have a window, wall, fence or some other barrier to prevent customers from falling from the bench-like platform in the east 300 level outdoors smokers lounge to the ground over forty feet below;

"c.   In choosing not to have or implement adequate policies or procedures requiring its employees *or agents*[3] to look for customers sitting on the bench-like platform in the east 300 level smokers lounge and warn those customers not to sit there due to the dangers;

"d.   In choosing not to have or implement adequate policies or procedures requiring its employees *and other agents* to inform [OAC] of repeated incidents wherein its personnel observed customers at The Rose Garden in potentially dangerous situations so that [OAC] could then take safety measures to protect its customers;

"e.   In choosing to have moveable picnic tables in the east 300 level smokers lounge that could be used to access and sit on the bench-like platform;

"f.   In choosing not to have adequate policies or procedures requiring its employees *or agents* to take reasonable steps to prevent the moveable picnic tables in the east 300 level smokers lounge from being used to access and sit on the bench-like platform;

"g.   In having unsafe premises due to having a large horizontal concrete area directly behind part of the bench-like platform in the east 300 level smokers lounge, which tended to give an impression that the bench-like platform could safely be used for seating, that stops midway so that a portion of the bench-like platform does not have the horizontal concrete area behind it;

---

[3] In the second amended complaint, paragraphs c., d., and f. included express references to Coast to Coast. For example, paragraph c. of the second amended complaint alleged that OAC was negligent "[i]n choosing not to have or implement adequate policies or procedures requiring its employees or agents, *including co-Defendant Coast to Coast Event Services, Inc.*, to look for customers sitting on the bench-like platform * * *." (Emphasis added.)

"h.   In having nighttime lighting in the east 300 level smokers lounge that did not adequately illuminate the end of the large horizontal concrete area directly behind part of the bench-like platform, thereby making it unreasonably difficult to notice that only half of the bench-like platform had a large horizontal concrete area behind it; and

"i.   In choosing not to use its video security surveillance system to have a surveillance camera adequately directed into the east 300 level smokers lounge, thereby failing to obtain information from that source about customers on the bench-like platform so that they could be protected from the risk of harm."

(Emphasis added.) The parties agreed to limit the evidence to the scope of the third amended complaint.

Over the course of the 10-day trial, both parties called Coast to Coast employees to testify as witnesses about the types of security Coast to Coast provided for OAC. Plaintiff proposed a verdict form that asked the jury to determine if Coast to Coast was negligent and in what proportion.[4] OAC opposed plaintiff's proposed verdict form, arguing that negligence by Coast to Coast should not be included in the jury verdict form because, "[i]n this particular case, this has been tried as if we are responsible for all the actions of Coast to Coast" and including Coast to Coast on the verdict form would attribute liability to OAC twice. OAC's attorney stated that OAC would "assume the responsibility" for Coast to Coast, and suggested that the court instruct the jury that "to the extent Coast to Coast is at fault, assign it to us." As OAC

---

[4] ORS 31.600(2) provides:

"The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection. Except for persons who have settled with the claimant, there shall be no comparison of fault with any person:

"(a)  Who is immune from liability to the claimant;

"(b)  Who is not subject to the jurisdiction of the court; or

"(c)  Who is not subject to action because the claim is barred by a statute of limitation or statute of ultimate repose."

requested, the trial court ruled that Coast to Coast would not be included in the jury verdict form.

Accordingly, plaintiff proposed the following jury instruction:

> "Coast to Coast Event Services was the agent of the defendant Oregon Arena Corporation. Any negligence of Coast to Coast Event Services is the negligence of the defendant Oregon Arena Corporation."

OAC's attorney objected to plaintiff's proposed jury instruction. OAC argued that, because the allegations of fault in the pleadings were all personal to OAC and there were no pleadings to support independent negligence of Coast to Coast, the instruction was in error. The court overruled OAC's objection. The court gave the proposed instruction and also told the jury, "And just to be clear, in this case, * * * there's the direct liability of OAC and then there's the principal-agent liability as to Coast to Coast. That's all under OAC as already [has] been explained." OAC took exception to the instruction and the court's comment.

The jury found that OAC was 50 percent at fault and plaintiff was 50 percent at fault. The jury found that plaintiff had economic damages of $2,750,000 and noneconomic damages of $1,500,000. Accordingly, the court awarded plaintiff damages of $2,125,000 (50 percent of the total damages found by the jury).[5] OAC appeals.

The two related issues on appeal are whether the trial court erred (1) in instructing the jury that any negligence of Coast to Coast is the negligence of OAC, and (2) in repeating that principle in its comment to the jury about the instruction. OAC renews the argument that it made to the trial court: The jury should not have been instructed that any negligence of Coast to Coast is the negligence of OAC, because there were no pleadings to support independent negligence of Coast to Coast. Plaintiff responds that the court properly instructed the jury as to the legal effect of OAC's delegation of responsibility to Coast to Coast as its agent. In

---

[5] Under ORS 31.600(1), a plaintiff is entitled to recovery if her contributory negligence is 50 percent or less.

addition, plaintiff argues that the jury instruction was consistent with OAC's theory of the case. We agree with plaintiff.

We begin with an overview of the agency principles applicable to this case. An agent is one who is subject to the control of another and acts on behalf of the other. *Vaughn v. First Transit, Inc.*, 346 Or 128, 136, 206 P3d 181 (2009). Generally, a principal is not liable in tort for physical injuries caused by the action of its nonemployee agents unless the principal intended or authorized the result or manner of performance of the agent. *Id.* at 137. Stated differently, a principal is liable for the actions of a nonemployee agent only if those actions are "within the actual or apparent authorization of the principal." *Jensen v. Medley*, 336 Or 222, 231, 82 P3d 149 (2003).

In *Lipman Wolfe v. Teeples & Thatcher*, 268 Or 578, 587, 522 P2d 467 (1974), the Supreme Court held that when a storekeeper has an independent contractor perform work that increases the danger to the storekeeper's customers but the storekeeper continues to invite customers, the storekeeper is vicariously liable for the negligence of the independent contractor. *See also Bryant v. Sherm's Thunderbird Mkt.*, 268 Or 591, 602, 522 P2d 1383 (1974) ("[A] storekeeper cannot delegate to any third party his duty to his customers to keep the premises reasonably safe."). Thus, a landowner cannot delegate its responsibility to keep the premises safe for its business invitees.

Here, OAC concedes that Coast to Coast was its agent and OAC's duty to maintain the safety of the Rose Garden was a nondelegable duty. Despite these concessions, OAC argues that the court erred in instructing the jury that "[a]ny negligence of [Coast to Coast] is the negligence of [OAC]." The argument is two-fold: (1) In the absence of allegations specifying the ways in which Coast to Coast was negligent, the jury should not have been allowed to consider Coast to Coast's negligence; and (2) by instructing the jury that "any" negligence of Coast to Coast is the negligence of OAC, the court gave the jury "free rein to speculate about 'any negligence' of Coast to Coast, and then to attribute that unpleaded negligence, whatever it might be, to OAC." In other words, OAC contends that the instruction allowed the

jury to hold OAC responsible even for negligence by Coast to Coast that would otherwise be outside the scope of OAC's acknowledged vicarious liability as Coast to Coast's principal, even though the third amended complaint alleged that, at all material times, Coast to Coast was acting within the course and scope of its services for OAC.

The first prong of OAC's argument—that, under ORCP 18 A,[6] plaintiff was required to allege the specific ways in which Coast to Coast was negligent—derives from *Holger v. Irish*, 316 Or 402, 851 P2d 1122 (1993). In *Holger*, the Supreme Court held that an operating room surgeon was not vicariously liable for the negligence of nurses in the operating room. *Id.* at 413. In the process, the court explained that, "under ORCP 18 A, a pleader is required to state *in what way* the defendant allegedly was negligent." *Id.* at 407 (emphasis in original). Given the way in which this case was pleaded and tried, OAC's reliance on *Holger* is misplaced. Plaintiff's complaint specifically alleged that OAC was negligent in "choosing not to have or implement adequate policies or procedures requiring its employers or agents to look for customers sitting on the bench-like platform in the east 300 level smokers lounge and warn those customers not to sit there due to the dangers[.]" It also specifically alleged that OAC was negligent in "choosing not to have or implement" policies requiring its employees or agents to inform OAC of customers observed in potentially dangerous situations and requiring employees and agents to prevent moveable picnic tables from being used to access the platform from which plaintiff fell. At the same time, plaintiff further alleged—and OAC conceded—that Coast to Coast was OAC's agent; moreover, there was evidence in the record that OAC hired Coast to Coast to handle "implementation" of safety policies in the Rose Garden. Thus, the complaint specifically alleged the ways in which agents, including Coast to Coast, failed to implement safety policies, and the jury was properly allowed to consider Coast to Coast's negligence.

---

[6] ORCP 18 A provides that a pleading shall contain a "plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition."

■    The second prong of OAC's argument focuses on the use of the phrase "any negligence." As noted above, OAC contends that the instruction invited the jury to consider "any" evidence of negligence by Coast to Coast, whether or not that negligence had been alleged in the complaint. Again, we are not persuaded.

In addition to instructing the jury that "[a]ny negligence of [Coast to Coast] is the negligence of [OAC]," the court instructed the jury that it could decide only the questions framed by the pleadings:

> "The questions to be decided in a lawsuit are defined in certain formal papers filed in court by the parties. We call these pleadings. These consist of the plaintiff's complaint which sets forth the plaintiff's claims as to the facts, the defendant's answer in which the defendant either admits or denies various claims of the defendant and sets forth any additional claims or defenses on which the defendant relies, and then the plaintiff's reply in which the plaintiff admits or denies the various claims or defenses in the defendant's answer.

> "By these pleadings, questions of fact are presented, and it's these questions and only these that are submitted for your determination."

Thus, the jury was instructed that the negligence of Coast to Coast for which OAC could be held liable was limited by the specifications of negligence in the complaint. Further, the complaint alleged that Coast to Coast acted within the course and scope of its services to OAC at all material times. Given those limitations and OAC's position that it was responsible for Coast to Coast's conduct, the trial court did not err in instructing the jury that OAC was responsible for "any" negligence by Coast to Coast. In light of the strictures of those instructions, the jury would have understood that "any negligence" referred to negligence within the scope of the pleadings, and the jury instruction was not an invitation to go beyond the pleadings. *See Maas v. Willer*, 203 Or App 124, 129, 125 P3d 87 (2005), *rev den*, 340 Or 411 (2006) ("We review jury instructions as a whole and will reverse only if we can fairly say that the instructions probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case."). The trial court did not err

in giving plaintiff's proposed jury instruction and did not err in giving the additional comment to the jury.

Affirmed.