Argued and submitted September 17, 2015, affirmed November 2, 2016

**BULL MOUNTAIN MEADOWS, LLC,**
*Petitioner,*

*v.*

**FRONTIER COMMUNICATIONS
NORTHWEST, INC.;**
and Public Utility Commission,
*Respondents.*

Public Utility Commission of Oregon
1669; A157250

386 P3d 178

James D. Howsley argued the cause for petitioner. With him on the briefs was Jordan Ramis PC.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent Public Utility Commission. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Courtney D. Duke-Driessen and Washington County Counsel filed the brief *amicus curiae* for Washington County, the Association of Oregon Counties, and the League of Oregon Cities.

No appearance for respondent Frontier Communications Northwest, Inc.

44

Before DeVore, Presiding Judge, and Flynn, Judge, and Schuman, Senior Judge.

## FLYNN, J.

Petitioner, Bull Mountain Meadows, LLC, seeks judicial review of an order of the Public Utility Commission (PUC), contending that the PUC erred in determining that Frontier Communications Northwest, Inc., a private telecommunications utility, was permitted to charge Bull Mountain $23,872 for the cost of relocating utility poles. Bull Mountain is the developer of a residential subdivision and requested relocation of the utility poles in order to make street improvements along an adjacent public road— improvements that Washington County was requiring Bull Mountain to make as a condition of obtaining land use approval for the subdivision development. Bull Mountain's complaint against Frontier alleged, among other contentions, that it was acting as the agent of a "public body" when it requested relocation of Frontier's utilities, and was, therefore, exempt under the terms of Frontier's tariff from the obligation to pay for the relocation.

We review orders of the PUC to determine whether that body correctly applied the applicable law, whether there is substantial evidence to support its findings, and whether it acted within the scope of its discretion. ORS 756.610(1); ORS 183.482(8). We write to address Bull Mountain's argument that the PUC erred in rejecting Bull Mountain's contention that it was acting as the agent of a "public body" when requesting that Frontier move the utility poles, and we affirm.[1]

We draw the largely undisputed facts from the PUC's order. Bull Mountain is the developer of a 14-lot single family residential subdivision on SW Bull Mountain Road in Washington County. The county has designated SW Bull Mountain Road to be a "collector street" in its transportation system plan, but the county has not yet widened the road to "collector street" status. When Bull Mountain sought a

---

[1] In addition to challenging the PUC's determination regarding the "public body" tariff exemption, Bull Mountain also assigns error to the PUC's rejection of Bull Mountain's alternative arguments: that Frontier's charge was a prohibited "unjust and unreasonable exaction" and that Frontier's charge constituted a "taking" under the state and federal constitutions. We reject those alternative assignments of error without written discussion.

development permit for its subdivision, the county required, as a condition of approval, that Bull Mountain improve half of the adjacent segment of SW Bull Mountain Road to "collector" street standards. Those requirements included dedicating additional right-of-way to permit a wider road and to make the improvements along that additional right-of-way, such as adding "curb and gutter, storm drainage, concrete sidewalk, planter strip and continuous roadway illumination." In order to make the required improvements, Bull Mountain requested that Frontier move existing poles, cables, and in-ground fiber-optic facilities.

The compensation that a telecommunications utility may charge for services is strictly governed by the utility's approved rate schedule, or tariff. ORS 759.260(1). Frontier's tariff that was in effect at the relevant time specified that, when utility facilities were relocated at the request of a customer or "third-party,"

> "the entire cost of removing the old and construing the new will be borne by the applicant/customer or others requesting the relocation. Payment for the cost of the change or relocation must be made prior to the change or relocation."

The tariff provided in a footnote, however, that "[a] third-party request does not include a 'Public Body' as defined in [ORS 174.109]."

When Bull Mountain requested relocation of the utilities, Frontier demanded advance payment. Bull Mountain declined, asserting that it was acting as an agent for Washington County and was, thus, a "public body" within the meaning of the tariff's exemption. Frontier disagreed, and Bull Mountain filed this proceeding with the PUC to resolve the dispute.

Citing the Supreme Court's decision in *Vaughn v. First Transit, Inc.*, 346 Or 128, 135, 206 P3d 181 (2009), the PUC identified two requirements for the existence of an agency relationship: "(1) a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent to so act; and (2) the agent must be subject to the principal's control." *See Vaughn*, 346 Or at 135 ("At common law, 'agency' was defined as a relationship

that 'results from the manifestation of consent by one person to another that the other shall act *on behalf and subject to his control*, and consent by the other so to act.'" (Quoting *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 617, 892 P2d 683 (1995) (emphasis in *Vaughn*)). The PUC evaluated Bull Mountain's claim of agency under the two-part standard that it described and found that neither condition had been met:

> "Bull Mountain offered no evidence that Washington County intended that Bull Mountain was acting on its behalf when it undertook to widen the street. The street widening was a condition of Bull Mountain's permit. Bull Mountain was acting on its own behalf when it widened the street, even though the street widening was for the benefit of the county. Similarly, Bull Mountain offered no evidence that it was under the control of the county when it undertook the street widening. Again, the street widening was a condition of Bull Mountain's permit. If Bull Mountain had decided not to proceed with its subdivision it would not have had to widen the street."

On review, Bull Mountain renews its argument that it qualifies as an agent of Washington County and, therefore, qualifies as a "public body" within the meaning of the tariff's exemption from charges for the cost of moving the utility poles. Bull Mountain does not challenge the common law agency test under which the PUC evaluated its "public body" claim. Rather, it contends that the PUC's determination is "premised on erroneous factual assumptions that ignore substantial evidence in the record." Thus, we consider whether the PUC's decision that Bull Mountain was not acting as Washington County's agent is supported by substantial evidence.

We conclude that the record supports the PUC's determination that Bull Mountain failed to establish the first prong of an agency relationship—that the county manifested to Bull Mountain that Bull Mountain was acting on the county's behalf—and, therefore, affirm without deciding whether Bull Mountain established the type of "control" necessary to make it the county's agent. As *Vaughn* indicates, the consent to an agency relationship must be mutual. 346 Or at 135. The principal's consent to an agency relationship

may be shown by an express agreement or it may be implied from the circumstances and from conduct of the parties. *Eads v. Borman*, 351 Or 729, 736, 277 P3d 503 (2012).[2]

Here, there is no evidence of an express agreement that Bull Mountain would act as the county's agent, such as a contract between it and Washington County, but Bull Mountain argues that consent to such an arrangement can be implied from other evidence. Bull Mountain relies on a letter that the county sent to Frontier regarding another subdivision development along SW Bull Mountain Road. The letter explained the county's position that, under Oregon law, a utility is required to relocate its facilities within the county's right-of-way "at the utility's expense when in conflict with public improvements" and that, "when constructing public improvements, the developers are doing them under our direction, which is covered by" the described law.[3] Petitioner also relies on an affidavit of an assistant county counsel stating that the county engineer's letter "accurately states the county's position" on petitioner's subdivision as well. The affidavit further stated that, when the county requests that a utility relocate its facilities for a public improvement, the utility pays the costs pursuant to ORS 758.010 to 758.025 (setting forth requirements for locating and relocating utility facilities within public rights of way).

Petitioner interprets those statements from the county as expressing the county's intention that petitioner

[2] When a case concerns a principal's liability to a third party for the agent's acts, the plaintiff may be able to establish an agent's authority by showing that the principal created the appearance of consent to the agency relationship, *i.e.*, based on the agent's "apparent authority." *See Eads*, 351 Or at 736; *Badger v. Paulson Investment Co. Inc*, 311 Or 14, 24, 803 P2d 1178 (1991) (the theory of apparent authority applies when an agent acts in excess of actual authority but with appearance of authority).

[3] The relevant portion of the letter stated:

"Oregon Revised Statute (ORS) 758.010 requires utility companies to relocate their lines, fixtures, and facilities within the County right-of-way at the utility's expense when in conflict with public improvements. Most of the time developers need to have these items moved to comply with County 'Conditions of Approval' placed on their development to construct public improvements such as sidewalks or road widening. When constructing public improvements, the developers are doing them under our direction, which is covered by the ORS.

"This has been the County's policy for decades and is based on advice from legal counsel."

would act on behalf of the county when making the required improvements, but the PUC did not err in finding otherwise. There is no evidence that Washington County sent a similar letter to Frontier regarding Bull Mountain's development or in any way communicated to Frontier that Bull Mountain's relocation request was made on behalf of the county. The statement by the assistant county counsel that the letter regarding the other development reflects "the county's position" on Bull Mountain's development may mean that the county agrees with Bull Mountain that Frontier should move the utility poles without charge. But that falls short of establishing, as a matter beyond factual dispute, that the county was manifesting consent that Bull Mountain act on the county's behalf by developing the property or when improving the right-of-way or when it made the relocation request.

Nor do the circumstances of Bull Mountain's request necessarily imply that it was acting on the county's behalf by mutual consent. Although the county had established a transportation plan that designated SW Bull Mountain Road for the kind of road widening and improvement that Bull Mountain's improvements along the right-of-way would permit, there is no evidence that the county was implementing that designation. Specifically, there is no evidence about when—if ever—the county would make use of the improvements it had required as a condition of subdivision approval. Rather, there is simply evidence that the county chose to require developers to make—at the time of development— the half-road dedications and improvements that would ultimately be necessary if the county improves SW Bull Mountain Road to a "collector street" at some point in the future. Although it is undisputed that petitioner's widening of SW Bull Mountain Road as a condition for the development inured to the benefit of the county, that does not establish that the county manifested consent that Bull Mountain act on the county's behalf. Bull Mountain requested relocation of Frontier's utility services in order to make improvements that were a condition for approval of its development of the subdivision. The PUC did not err in determining that the county did not manifest consent that Bull Mountain act on behalf of the county in making those improvements and,

therefore, that Bull Mountain was not acting as a "public body" when it asked Frontier to move the utility poles.

There is no dispute that, if Bull Mountain was not acting as the agent of Washington County, then the terms of Frontier's tariff required it to pay for the cost of relocating the utility services. *See* ORS 756.565 ("All rates, tariffs, * * * approved or prescribed by the Public Utility Commission * * * shall be in force and shall be prima facie lawful and reasonable."). Thus, the PUC did not err in rejecting petitioner's contention that it could not be required under the tariff to pay the relocation costs and in dismissing the complaint.

Affirmed.